## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Civil Action No.:

LA POTENCIA, LLC, a
Delaware limited liability company,
and YC52, LLC d/b/a CHANDLER BATS,
a Florida limited liability company,

                Plaintiff,

v.

DAVID CHANDLER, an individual,
GROUP AUTHENTIC, a sole proprietorship,
MAXBAT, INCORPORATED, a
Minnesota corporation, PECOS LEAGUE
OF PROFESSIONAL BASEBALL CLUBS,
LLC, a Texas limited liability company,
BESTBATDEALS.COM,

                Defendants.

_____/

## COMPLAINT

Plaintiffs, LA POTENCIA, LLC ("La Potencia"), and YC52, LLC d/b/a CHANDLER

BATS ("YC52") (collectively "Plaintiffs"), by and through undersigned counsel, sue Defendants,

DAVID CHANDLER ("Chandler"), GROUP AUTHENTIC ("Group Authentic"), MAXBAT,

INCORPORATED ("MaxBat"), PECOS LEAGUE OF PROFESSIONAL BASEBALL CLUBS,

LLC ("Pecos"), and BESTBATDEALS.COM ("BestBatDeals.com") (collectively "Defendants"),

and allege:

### The Parties

1.     Plaintiff, La Potencia, LLC, is a Delaware limited liability company with its

principal place of business in Palm Beach County, Florida.

2.       Plaintiff, YC52, LLC, is a Florida limited company, with its principal place of business in Palm Beach County, Florida.

3.       Defendant, David Chandler, upon information and belief, is an individual domiciled in Montgomery County, Pennsylvania, who is promoting infringing goods and doing business throughout the United States including within this District.

4.       Defendant, Group Authentic, is, upon information and belief, a sole proprietorship owned by Defendant David Chandler.  Upon information and belief, Group Authentic is not incorporated to do business in any state, but has identified its address as being located in Philadelphia County, Pennsylvania.

5.       Defendant, MaxBat, is a Minnesota corporation with, upon information and belief, its principal place of business in Stearns County, Minnesota.

6.       Defendant, Pecos, is a Texas limited liability company with, upon information and belief, its principal place of business in Chambers County, Texas.

7.       Defendant, BestBatDeals.com, is, upon information and belief, an online only store that sells baseball bats and related baseball products via its online store throughout the United States.  BestBatDeals.com's state of incorporation is unknown.  BestBatDeals.com lists an address in Harris County, Texas on its website as a mailing address, which is an identical address to an address listed for Defendant Pecos.

### Jurisdiction and Venue

8.       This is an action for, among other things, trademark infringement under 15 U.S.C. § 1051, *et seq.*, and for other claims and causes of action.

9.       This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. § 1121.

10.     The state law claims asserted herein are so related to those over which this Court has original jurisdiction as to form part of the same case or controversy.  Therefore, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the state law claims asserted herein.

11.     This Court has personal jurisdiction over Chandler because he operates, conducts, engages in, and carries on business in Florida, committed a tortious act within Florida, including within this judicial district, and caused injury to persons within Florida.  Among other things, Chandler is having manufactured on his behalf (and/or manufacturing), offering for sale, selling and/or distributing infringing goods at issue in this case within Florida, including within this District, and is causing injury to Plaintiffs in Florida.  Moreover, Chandler defaulted under an agreement governed by Florida law by failing to perform acts in Florida, as set forth in more detail below, and Chandler consented to jurisdiction and venue in Florida in the subject agreement.  Thus, this Court's exercise of personal jurisdiction over Chandler is consistent with the Constitution of the United States and Fla. Stat. § 48.193.

12.     This Court has personal jurisdiction over Group Authentic because it operates, conducts, engages in, and carries on business in Florida, committed a tortious act within Florida, including within this judicial district, and caused injury to persons within Florida.  Among other things, Group Authentic is having manufactured on its behalf (and/or manufacturing), offering for sale, selling and/or distributing infringing goods at issue in this case within Florida, including within this District, and is causing injury to Plaintiffs in Florida.  Thus, this Court's exercise of personal jurisdiction over Group Authentic is consistent with the Constitution of the United States and Fla. Stat. § 48.193.

13.     This Court has personal jurisdiction over MaxBat because it operates, conducts, engages in, and carries on business in Florida, committed a tortious act within Florida, including

within this judicial district, and caused injury to persons within Florida.  Among other things, MaxBat is manufacturing, offering for sale, selling and/or distributing infringing goods at issue in this case within Florida, including within this District, and is causing injury to Plaintiffs in Florida. Thus, this Court's exercise of personal jurisdiction over MaxBat is consistent with the Constitution of the United States and Fla. Stat. § 48.193.

14.     This Court has personal jurisdiction over Pecos because it operates, conducts, engages in, and carries on business in Florida, committed a tortious act within Florida, including within this judicial district, and caused injury to persons within Florida.  Among other things, Pecos is offering for sale, selling and/or distributing infringing goods at issue in this case within Florida, including within this District, and is causing injury to Plaintiffs in Florida.  Thus, this Court's exercise of personal jurisdiction over Pecos is consistent with the Constitution of the United States and Fla. Stat. § 48.193.

15.     This Court has personal jurisdiction over BestBatDeals.com because it operates, conducts, engages in, and carries on business in Florida, committed a tortious act within Florida, including within this judicial district, and caused injury to persons within Florida.  Among other things, BestBatDeals.com is offering for sale, selling and/or distributing infringing goods at issue in this case within Florida, including within this District, and is causing injury to Plaintiffs in Florida.  Thus, this Court's exercise of personal jurisdiction over Pecos is consistent with the Constitution of the United States and Fla. Stat. § 48.193.

16.     Venue is proper in the United States District Court for the Southern District of Florida pursuant to at least 28 U.S.C. §§ 1391.

## General Allegations

**A.**     **YC52's Chandler Bats.**

17.     YC52 owns, manufactures, markets, sells, and distributes high performance wood baseball bats and ancillary products (the "YC52 Goods").  YC52 sells its YC52 Goods throughout the United States and the world to Major League Baseball players, Minor League Baseball players, and other athletes. A few examples of well-known Major League Baseball players that use YC52's bats include Aaron Judge, Robinson Canó, and Bryce Harper.

18.     YC52 manufactures, markets, sells, and distributes all of its YC52 Goods in interstate commerce in connection with and association with the CHANDLER BATS trademark and tradename, as well as in connection with and association with the C CHANDLER and Design trademark, and has been doing so continuously, through its own use and/or through the use of its predecessors in interest, since as least as early as 2010.

19.     Plaintiff La Potencia is the owner and holder of U.S. Trademark Registration No. 4,503,473 for the mark "CHANDLER BATS" (the "'473 Registration") and U.S. Trademark Registration No. 4,542,834 for the mark "C CHANDLER and Design" (the '834 Registration) (collectively the "Marks" or the "CHANDLER BATS Marks"). True and correct copies of the Certificate of Registrations for the Marks are attached hereto as composite **Exhibit "A."**  Those registrations are valid and subsisting.

20.     YC52 is the exclusive licensee of the CHANDLER BATS Marks, '473 Registration and '834 Registration, and has the right to enforce the rights associated with CHANDLER BATS Marks and the subject registrations.  A true and correct copy of the License to Use Intellectual Property is attached hereto as **Exhibit "B."**

21.     YC52 also owns the domain name "chandlerbats.com," and operates a website at that domain, which YC52 uses to market, promote and sell CHANDLER BATS.

22.     YC52 and its predecessors in interest have been continuously using the CHANDLER BATS Marks throughout the United States, including in Florida, in connection with and in association with the YC52 Goods since at least as early as 2010 and has extensively marketed the YC52 Goods using the CHANDLER BATS Marks since that time. As a result, in addition to the rights conferred by the '473 Registration and '834 Registration, YC52 has acquired substantial common law and other legal rights in and to the CHANDLER BATS Marks throughout the United States, including Florida, by virtue of that continuous and ongoing usage.  Additionally, consumers know and recognize the CHANDLER BATS Marks and associate them distinctly with YC52 and the high quality goods that it markets, sells, and provides.  Moreover, the CHANDLER BATS Marks have acquired valuable goodwill and fame throughout the United States and Florida, and are used by current Major League Baseball players.  The CHANDLER BATS Marks have acquired secondary meaning and gained strength and widespread recognition in the wood baseball bat industry, including with respect to actual and prospective customers of such goods.

23.     La Potencia and/or its licensees also have additional U.S. trademark applications pending for related marks.

24.     As a result of YC52's substantial and significant ongoing advertising, marketing, and promotional efforts, YC52's use of the CHANDLER BATS Marks, the national geographical scope in which YC52 uses and promotes the CHANDLER BATS Marks, and the high degree of consumer recognition, the CHANDLER BATS Marks have acquired secondary meaning, have become well-known and famous in the baseball industry, and have acquired extremely valuable

goodwill such that the public associates the CHANDLER BATS Marks with YC52 as the source of high quality wood baseball bats.

**B.      Assignment of the CHANDLER BAT Marks.**

25.      La Potencia acquired its rights in the CHANDLER BATS Marks from RxSport, Corp. ("RxSport").   Defendant Chandler was previously the President and former operator of RxSport.

26.      Specifically, in or about April 2017, RxSport entered into an Amended and Restated Loan Agreement (the "Loan Agreement") with La Potencia, which, among other things, (i) provided capital to RxSport from La Potencia to operate RxSport's business of manufacturing, marketing, and selling baseball bats and related products, and (ii) provided La Potencia with a security interest in all of RxSport's assets as collateral for the subject loan. Chandler joined in and executed the Loan Agreement so that it was enforceable against him. A true and correct copy of the Loan Agreement is attached hereto as **Exhibit "C."**

27.      The Loan Agreement also contained a non-compete provision, which provided that Chandler, as an individual or through any entity with which he was affiliated, would not compete with RxSport and La Potencia in any manner or solicit for employment any employee or consultant of RxSport. *See* Loan Agreement, § 4.10(b).   The Loan Agreement also contained a provision prohibiting Chandler from disclosing any of RxSport's Confidential Information to third parties.

28.      Additionally, Chandler agreed that irreparable injury to La Potencia would result from a breach or threatened breach by Chandler of any of the covenants or agreements set forth in § 4.10 of the Loan Agreement. *See* Loan Agreement, § 4.10(c).

29.     Contemporaneous with the Loan Agreement, RxSport and La Potencia signed an Amended and Reinstated Security Agreement, dated April 27, 2017 (the "Security Agreement"). A true and correct copy of the Security Agreement is attached hereto as **Exhibit "D."**

30.     On January 10, 2019, RxSport defaulted on the Loan Agreement and the Security Agreement when it filed Chapter 11 bankruptcy in the Eastern District of Pennsylvania, Case No. 19-10187-elf. Subsequently, the bankruptcy proceeding was dismissed on June 27, 2019.

31.     On July 18, 2019, La Potencia sent RxSport a letter notifying RxSport of its default and identifying the total unpaid balance of $1,084,029.49 owed by RxSport to La Potencia.  In that letter, La Potencia notified RxSport that it was retaining RxSport's assets as collateral for defaulting on the Loan Agreement ("La Potencia's Retention of Collateral Letter").  A copy of La Potencia's Retention of Collateral Letter is attached hereto as **Exhibit "E."**

32.     In response, RxSport, through its President, Chandler, executed a "Acknowledgement and Consent" attached to the Retention of Collateral Letter ("RxSport Assignment"), in which RxSport unconditionally and irrevocably acknowledged and agreed that it had defaulted on the Security Agreement upon filing for bankruptcy, the bankruptcy proceeding was dismissed, and an Event of Default (as defined in the Security Agreement) existed.  Moreover, RxSport unconditionally and irrevocably consented to the retention by La Potencia of all of the Collateral, which included the rights and ownership interests in the CHANDLER BATS Marks.[1] It also included all trade secrets and formulas.

---

[1] The assignment of rights in the CHANDLER BATS Marks from RxSport to La Potencia has been recorded with the USPTO.  However, as of the time of filing this Complaint, the USPTO has not yet updated its records online.

33.     The retention of Collateral by La Potencia essentially amounted to a sale of all of RxSport's assets to La Potencia for $1,084,029.49.  In addition to the trademark rights, La Potencia acquired all of RxSport's trade secrets, including all formulas.

**C.      Chandler's Improper Competition, Conversion of Funds and Misappropriation of Trade Secrets and Formulas.**

34.     After RxSport defaulted on the Loan Agreement, YC52 and Chandler agreed that YC52 would employ Chandler for Chandler to work for YC52 in a similar capacity as he worked for RxSport.  Chandler was employed by YC52 from approximately July 2019 through October 2019.  As part of his employment, he was required to assist YC52 with accessing and use of RxSport's prior assets, including locating and accessing the trade secrets and formulas.

35.     However, while being employed by YC52, Chandler began planning the formation of a new business with the intent of using Plaintiffs' newly acquired trade secrets and formulas, and with the intent of marketing, manufacturing, and selling baseball bats, all in competition with YC52 and in connection with the CHANDLER BATS Marks or a confusingly similar variation, despite just transferring all of those assets and rights in those marks.

36.     For example, while being employed by YC52 and possibly following his employment, Chandler solicited employees of La Potencia and/or YC52 and offered them employment with his new company.  Chandler also solicited investors and wholesalers to market, sell, and distribute baseball bats for his new company. True and correct copies of text message conversations with potential investors are attached hereto as **Exhibit "F."**

37.     Chandler also solicited active and retired Major League Baseball players of his intent to form a new company. True and correct copies of text message conversations with a retired Major League Baseball player are attached hereto as **Exhibit "G."**

38.     Chandler also began disclosing the trade secrets and formulas RxSport transferred to La Potencia to vendors and/or other third parties to, among other things, have competing wood bats manufactured for Chandler's sale and distribution.  For example, upon information and belief, Chandler has disclosed such trade secrets and formulas to MaxBats in connection with MaxBats' manufacturing of the Infringing Goods.

39.     In addition to his actions to prepare his improper new business, Chandler failed to deliver all assets acquired by La Potencia as part of the retention of Collateral and/or took assets that were to be acquired by La Potencia before La Potencia could access them.  For example, while employed by YC52, Chandler, without authorization, withdrew funds from YC52's bank accounts for personal use.  Among other things, he used those funds to pay debts that were owed by RxSport prior to the retention of collateral by La Potencia. YC52 had no obligation to pay those debts, and RxSport no longer owned the assets in those accounts at the time of Chandler's unauthorized withdrawal.  Chandler also used YC52's corporate credit cards/accounts to pay for personal expenses.  Chandler also failed to provide YC52 information concerning the location of, and failed to provide proper access to, the trade secrets and formulas used for CHANDLER BATS.

**D.     Chandler and Group Authentic's Infringement of the CHANDLER Marks.**

40.     In October 2019, YC52 terminated Chandler's employment due to his improper conduct.

41.     Chandler eventually began, and is now currently, having manufactured (and/or manufacturing), offering for sale, selling, and distributing, among other things, wood baseball bats (the "Infringing Goods"), under the name and in connection with the trademarks "CHANDLER," "AUTHENTIC BATS BY DAVID CHANDLER," "AUTHENTIC BY DAVID CHANDLER,"

"AUTHENTIC EXPERIENCE BY DAVID CHANDLER," and "AUTHENTIC BY DAVID CHANDLER and Design" (the "Infringing Marks" or "Infringing CHANDLER BAT Marks").

42.     Chandler's new Infringing Marks are nearly identical to the CHANDLER BATS Marks.

43.     Use of the CHANDLER BATS Marks by YC52 and its predecessors in interest, which dates back to 2010, undisputedly predates Chandler's use of his new Infringing Marks in Florida and in all geographical areas of the United States.  Chandler is competing with YC52 by marketing, selling and providing goods that are identical to YC52's Goods, namely wood baseball bats and ancillary goods.  Additionally, Chandler is targeting identical consumers, namely Major League Baseball players and other athletes.

44.     For example, Chandler is using a new entity, Group Authentic, which appears to be a sole proprietorship, to market, promote and sell Infringing Goods to Major League Baseball teams.  Upon information and belief, Chandler provided samples of the Infringing Goods to Major League Baseball through Group Authentic in an attempt to get on the approved list of Major League Baseball bat suppliers and, in doing so, represented that Group Authentic had an intent to distribute the Infringing Goods to Major League Baseball teams.

45.     Chandler and Group Authentic's unauthorized use of the Infringing CHANDLER BATS Marks has caused or is likely to cause confusion, mistake, or deception among consumers as to the source, origin or sponsorship of such goods and services.  The consuming public is likely to believe that Chandler and Group Authentic's use of the Infringing CHANDLER BATS Marks in connection with its wood baseball bats and ancillary goods is authorized by YC52 when such is not the case.  Chandler's use of the Infringing Marks has already caused confusion on various search engines such as Google when searching for CHANDLER BATS.

46.     Moreover, Chandler and Group Authentic's unauthorized use of the Infringing CHANDLER BATS Marks has allowed Chandler to use, trade off of and benefit from YC52 and its CHANDLER BATS Marks' valuable goodwill.  Chandler is clearly attempting to confuse customers into believing they are purchasing actual CHANDLER BATS.

47.     Chandler is also using the terms "Authentic" and "Handcrafted" in connection with his Infringing Marks, attempting to insinuate that he is selling authentic and handcrafted CHANDLER BATS when he is not.  He is also using the name "Group Authentic" for the entity in which he is attempting to sell his Infringing Goods to Major League Baseball, again insinuating that he is selling authentic CHANDLER BATS when he is not.  However, Chandler is not even manufacturing the Infringing Bats himself, but rather using a new manufacturer, MaxBat, who is not an authorized manufacturer of CHANDLER BATS and should not have access to the trade secret and formulas used for true authentic CHANDLER BATS.

48.     The unauthorized use by Defendants of the Infringing Marks has also injured or is likely to injure the reputation and goodwill associated with YC52 and its CHANDLER BATS Marks.  Among other things, Chandler now has a very bad reputation with many individuals and vendors associated with Major League Baseball.

49.     Chandler and Group Authentic were at all material times, aware of YC52 and its CHANDLER BATS Marks.  Chandler and Group Authentic's unauthorized use of the Infringing Marks is willful and intentional and intended as an effort to trade off of YC52's goodwill and reputation.

50.     Moreover, Chandler's actions are in direct violation of the non-compete provision detailed in the Loan Agreement.

E.      **MaxBat, Pecos and BestBatDeals.com.**

51.     MaxBat manufactures, markets, promotes, sells and distributes sporting goods, including wood baseball bats.   Upon information and belief, MaxBat is manufacturing and distributing the Infringing Goods for Chandler and/or Group Authentic.  MaxBat is using, without authorization, Plaintiffs' Confidential Information, including trade secrets and formulas, to manufacture the Infringing Goods and/or other competing goods.  Upon information and belief, MaxBat is aware and has knowledge that the Confidential Information, including trade secrets and formulas, does not belong to Chandler or Group Authentic.  Moreover, upon information and belief, MaxBat is using the Infringing CHANDLER BATS Marks in labeling, advertising, and selling the Infringing Goods.  However, use of YC52's CHANDLER BATS Marks, which dates back to 2010, undisputedly predates MaxBat's use of the Infringing CHANDLER BATS Marks.

52.     MaxBat's unauthorized use of the Infringing CHANDLER BATS Marks has caused or is likely to cause confusion, mistake, or deception among consumers as to the source, origin or sponsorship of such goods and services.  The consuming public is likely to believe that MaxBat's use of the Infringing CHANDLER BATS Marks in connection with its wood baseball bats is authorized by YC52 when such is not the case.

53.     Pecos is an independent baseball league that operates in various cities that do not have Major League Baseball or Minor League Baseball teams.  Pecos also has an online shop in which it sells baseball goods.  On its online shop, Pecos advertises the sale of baseball bats and contains links to purchase bats, including Chandler's Infringing Goods.  When you click on the links on Pecos' online shop, they redirect you to BestBatDeals.com to purchase Chandler's Infringing Goods.  Additionally, Pecos has made one of Chandler's Infringing Goods the "official bat" for its baseball league.  Copies of webpages from Pecos' website reflecting links to purchase

Chandler's Infringing Goods, as well as a press release regarding Chandler's Infringing Goods, are attached hereto as **Exhibit "H."**

54.     Use of YC52's CHANDLER BATS Marks, which dates back to 2010, undisputedly predates Pecos' use of the Infringing CHANDLER BATS Marks.  Pecos' unauthorized use of the Infringing CHANDLER BATS Marks has caused or is likely to cause confusion, mistake, or deception among consumers as to the source, origin or sponsorship of such goods and services. The consuming public is likely to believe that Pecos' use of the Infringing CHANDLER BATS Marks is authorized by YC52 when such is not the case.

55.     Upon information and believe, BestBatDeals.com is an online only store that markets, promotes, offers for sale, sells and distributes baseball bats, including Chandler's Infringing Goods.  Copies of webpages from BestBatDeals.com reflecting Chandler's Infringing Goods are attached hereto as composite **Exhibit "I."**

56.     Use of YC52's CHANDLER BATS Marks, which dates back to 2010, undisputedly predates  BestBatDeals.com's  use  of  the  Infringing  CHANDLER  BATS  Marks. BestBatDeals.com's unauthorized use of the Infringing CHANDLER BATS Marks has caused or is likely to cause confusion, mistake, or deception among consumers as to the source, origin or sponsorship of such goods and services.  The consuming public is likely to believe that BestBatDeals.com's use of the Infringing CHANDLER BATS Marks in connection with its wood baseball bats is authorized by YC52 when such is not the case.

57.     All conditions precedent to the filing of this action have been fulfilled or waived.

58.     Plaintiffs have retained the undersigned counsel to represent them in this action and are obligated to pay undersigned counsel's reasonable attorneys' fees, which fees, together with

costs, Plaintiffs are entitled to recover from Defendants pursuant to at least 15 U.S.C. § 1117, and additionally from Chandler pursuant to at least Section 4.10(c) of the Loan Agreement.

**COUNT I**
**Trademark Infringement under 15 U.S.C. § 1114**
**(By Both Plaintiffs against all Defendants)**

59.     Plaintiffs re-allege and re-aver paragraphs 1-58 as though fully set forth herein.

60.     This is an action for trademark infringement under 15 U.S.C. § 1114.

61.     La Potencia is the owner of the '473 Registration and '834 Registration for the CHANDLER BATS Marks.  YC52 is the exclusive licensee of the CHANDLER BATS Marks, '473 Registration and '834 Registrations, and has the right to enforce the rights associated with those marks and registrations.

62.     Defendants' use of the Infringing CHANDLER BATS Marks in doing business and in connection with the Infringing Goods, as well as use of the Infringing CHANDLER BATS Marks in advertising and promotional materials, has caused, and is likely to continue to cause, confusion, mistake or deception among consumers and customers as to the source, origin, or sponsorship of such goods or as to the affiliation, connection or association of Defendants with Plaintiffs.  The consuming public is likely to believe that Defendants' use of the Infringing CHANDLER BATS Marks in connection with the Infringing Goods is authorized, licensed, or sponsored by Plaintiffs when such is not the case.

63.     Defendants' use of the Infringing CHANDLER BATS Marks constitutes trademark infringement of the CHANDLER BATS Mark under 15 U.S.C. § 1114.

64.     As a proximate result of Defendants' actions, Plaintiffs have suffered and will continue to suffer damage to their business, goodwill, reputation, profits, and strength of their CHANDLER BATS Marks.  The injury to Plaintiff is ongoing, continuous and irreparable.  A

monetary award of damages alone cannot fully compensate Plaintiffs for their damages caused by Defendants, and Plaintiffs lack an adequate remedy at law.

65.     The foregoing acts have been and continue to be deliberate, willful, and wanton, making this an exceptional case within the meaning of 15 U.S.C. § 1117.

66.     Plaintiffs are entitled to a temporary and permanent injunction against Defendants as well as all other remedies available under the Lanham Act including, but not limited to, Defendants' profits, any damages sustained by Plaintiffs, treble damages and profits, and costs and attorneys' fees.

<u>**COUNT II**</u>
<u>**Trademark Infringement under 15 U.S.C. § 1125(a)**</u>
<u>**(Both Plaintiffs against all Defendants)**</u>

67.     Plaintiffs re-allege and re-aver paragraphs 1-58 as though fully set forth herein.

68.     Plaintiffs have common law rights in and to the CHANDLER BATS Marks throughout the United States and Florida based on their continuous use of the CHANDLER BATS Marks. Specifically, since at least as early as 2010, YC52 and La Potencia, through their own use or the use of their predecessors in interest, have continuously used the CHANDLER BATS Marks in connection with the YC52 Goods throughout the United States, including Florida, and have extensively marketed the YC52 Goods using the CHANDLER BATS Marks, such that consumers know and recognize the CHANDLER BATS Marks and associate them distinctly with YC52 and the high quality goods that it provides, markets, and sells. As a result, the CHANDLER BATS Marks have acquired valuable good will and fame throughout Florida and the United States.

69.     Defendants' use of the Infringing CHANDLER BATS Marks in doing business and in connection with their Infringing Goods, as well as use of the Infringing CHANDLER BATS Marks in advertising and promotional materials, has caused, and is likely to continue to cause,

16

confusion, mistake or deception among consumers and customers as to the source, origin, or sponsorship of such goods or as to the affiliation, connection or association of Defendants with Plaintiffs.  The consuming public is likely to believe that Defendants' use of the Infringing CHANDLER BATS Marks in connection with their Infringing Goods is authorized, licensed, or sponsored by Plaintiffs when such is not the case.

70.     Defendants' use of the Infringing CHANDLER BATS Marks constitutes infringement of Plaintiffs' valid and subsisting common law rights in the CHANDLER BATS Marks in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125.

71.     The foregoing acts have been and continue to be deliberate, willful, and wanton, making this an exceptional case within the meaning of 15 U.S.C. § 1117.

72.     As a direct and proximate result of Defendants' actions, Plaintiffs have suffered and will continue to suffer damage to their business, goodwill, reputation, profits, and strength of their CHANDLER BATS Marks.  The injury to Plaintiffs is ongoing, continuous, and irreparable. A monetary award of damages alone cannot fully compensate Plaintiffs for their damages caused by Defendants, and Plaintiffs lack an adequate remedy at law.  Accordingly, Plaintiffs are entitled to an order preliminarily and permanently enjoining and restraining Defendants from using the CHANDLER BATS Marks and the Infringing CHANDLER BATS Marks or any other confusingly similar variations thereof.

73.     Additionally, as a result of Defendants' actions described herein and pursuant to 15 U.S.C. § 1117(a), Plaintiffs are entitled to and should be awarded Defendants' profits, any damages sustained by Plaintiffs, treble damages and profits, and the costs of this action, in amounts to be determined at trial, as well as other available remedies, including, attorneys' fees.

## COUNT III
### False Association under 15 U.S.C. § 1125(a)
### (Both Plaintiffs against all Defendants)

74.     Plaintiffs re-allege and re-aver paragraphs 1-58 as though fully set forth herein.

75.     Defendants' unauthorized use of the Infringing CHANDLER BATS Marks in connection with baseball bats is likely to cause confusion, mistake, or deception among consumers and customers as to the source, origin, sponsorship, or approval of Defendants' Infringing Goods and commercial activities in that consumers or others are likely to believe that Defendants are associated with, connected to, affiliated with or related to Plaintiffs or that Plaintiffs authorize, license, sponsor, and/or control the sale and provision of the Infringing Goods by Defendants.

76.     Defendants' actions, as alleged herein, falsely suggest a connection with Plaintiffs and constitute false association in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

77.     The foregoing acts have been and continue to be deliberate, willful, and wanton.

78.     As a direct and proximate result of Defendants' actions, Plaintiffs have suffered and will continue to suffer damage to their business, goodwill, reputation, profits, and strength of their CHANDLER BATS Marks.  The injury to Plaintiffs is ongoing, continuous, and irreparable.

79.     A monetary award of damages alone cannot fully compensate Plaintiffs for their damages caused by Defendants, and Plaintiffs lack an adequate remedy at law.  Accordingly, Plaintiffs are entitled to an order preliminarily and permanently enjoining and restraining Defendants from using the CHANDLER BATS Marks or Infringing CHANDLER BATS Marks or any other confusingly similar variation thereof.

80.     Additionally, as a result of Defendants' actions described herein and pursuant to 15 U.S.C. § 1117(a), Plaintiffs are entitled to and should be awarded Defendants' profits, any damages

sustained by Plaintiffs, treble damages and profits, and the costs of this action, in amounts to be determined at trial, as well as other available remedies, including, attorneys' fees.

## COUNT IV
## False Designation of Origin under 15 U.S.C. § 1125(a)
## (Both Plaintiffs against all Defendants)

81.     Plaintiffs re-allege and re-aver paragraphs 1-58 as though fully set forth herein.

82.     The CHANDLER BATS Marks are distinctive marks and have become associated with YC52 and La Potencia and, thus, exclusively identify YC52 and La Potencia's business and products.

83.     Because of Defendants' wrongful use of the Infringing CHANDLER BATS Marks, consumers are deceptively led to believe that the Infringing Goods originate with, are sponsored by, or otherwise approved by Plaintiffs in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), or alternatively, will cause consumers to believe that the CHANDLER BATS Marks are generic, thus destroying the goodwill and value Plaintiffs have built in and with the CHANDLER BATS Marks.

84.     The foregoing acts and conduct by Defendants constitutes false designation of origin, passing off and false advertising in connection with goods distributed in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

85.     As a proximate result of Defendants' actions, Plaintiffs have suffered and will continue to suffer damage to their business, goodwill, reputation, profits and strength of their CHANDLER BATS Marks.  The injury to Plaintiffs is ongoing, continuous and irreparable.  A monetary award of damages alone cannot fully compensate Plaintiffs for their damages caused by Defendants, and Plaintiffs lack an adequate remedy at law.

86. Plaintiffs are entitled to a temporary and permanent injunction against Defendants, as well as all other remedies available under the Lanham Act including, but not limited to, compensatory damages, disgorgement of profits, treble damages and profits, and costs and attorneys' fees.

## COUNT V
## Unfair Competition under Florida Common Law
## (YC52 against all Defendants)

87. YC52 re-alleges and re-avers paragraphs 1-58 as though fully set forth herein.

88. YC52 first adopted and used the CHANDLER BATS Marks throughout Florida in marketing, advertising, and sales to identify YC52 as the source of its high quality YC52 Goods. Consumers associate the origin of the YC52 Goods under its CHANDLER BATS Marks as being provided and sold by YC52.

89. Defendants' unauthorized use of the Infringing CHANDLER BATS Marks is causing or is likely to cause customer confusion as to the source or the origin of Defendants' Infringing Goods. Moreover, Defendants' unauthorized use of the Infringing CHANDLER BATS Marks have allowed Defendants to use, trade off of, and benefit from YC52 and its CHANDLER BATS Marks' valuable goodwill.

90. Defendants are engaging in unfair acts of competition in violation of Florida law and have infringed and continue to infringe YC52's trademark rights in the CHANDLER BATS Marks.

91. Defendants' use of the Infringing CHANDLER BATS Marks are causing and will continue to cause damage to YC52 including, but not limited to, irreparable harm. YC52 has no adequate remedy at law.

92.    YC52 is entitled to a temporary and permanent injunction against Defendants, as well as all other remedies available including, but not limited to, compensatory damages, disgorgement of profits, treble damages and profits, and costs and attorneys' fees.

## COUNT VI
## Breach of Contract
## (Both Plaintiffs against Chandler)

93.    Plaintiffs re-allege and re-aver paragraphs 1-58 as though fully set forth herein.

94.    In or about April 2017, RxSport entered into the Loan Agreement and the Security Agreement with La Potencia.  Chandler joined in and executed the Loan Agreement so that it was enforceable against him.  The Loan Agreement and the Security Agreement were and are valid and enforceable.

95.    Chandler breached the Loan Agreement by failing to deliver all assets acquired by La Potencia as part of the retention of Collateral and/or by taking assets that were to be acquired by La Potencia before La Potencia could access them.  As explained above, Chandler withdrew funds from YC52 accounts for personal use that should have been acquired by La Potencia as part of the retention of Collateral. Chandler also used YC52 credit cards for personal use.  Chandler also failed to provide YC52 information concerning the location of, and failed to provide proper access to, the trade secrets and formulas used for CHANDLER BATS.  Chandler also breached his employment arrangement with YC52 by, among other things, improperly preparing to compete with Plaintiffs while employed by YC52 as explained above.

96.    Chandler also breached the Loan Agreement by violating the non-compete provisions.  Chandler agreed to be bound by the non-compete until all obligations under the Loan Agreement were satisfied.  Because Chandler failed to deliver all of the assets as part of the retention of Collateral, the obligations were not fully satisfied, and the non-compete remains in

full force and effect.  However, Chandler is marketing, having manufactured, offering for sale, selling, and distributing, among other things, wood baseball bats, which is in direct competition to Plaintiffs.

97.     As a direct and proximate result of Chandler's breaches of the Loan Agreement and his employment arrangement with YC52, Plaintiffs have been damaged and are entitled to recover from Chandler all damages, including monetary obligations owed under the respective agreements, compensatory damages and/or damages, resulting from Chandler's breaches of the agreements.

98.     Additionally, Plaintiffs are entitled to an injunction and attorneys' fees incurred by Plaintiffs in connection with this lawsuit, pursuant to Section 4.10 (c) of the Loan Agreement.

**COUNT VII**
**Conversion**
**(Both Plaintiffs against Chandler)**

99.     Plaintiffs re-allege and re-aver paragraphs 1-14 and 25-39 as though fully set forth herein.

100.     In or about April 2017, RxSport entered into the Loan Agreement and the Security Agreement with La Potencia.  Chandler joined in and executed the Loan Agreement.

101.     RxSport failed to repay the Loan pursuant to the Loan Agreement but rather filed for Chapter 11 bankruptcy.

102.     To satisfy the unpaid balance of the Loan, RxSport, through Chandler, executed a the RxSport Assignment, in which RxSport unconditionally and irrevocably acknowledged and agreed that it had defaulted on the Security Agreement upon filing for bankruptcy, the bankruptcy proceeding was dismissed, and an Event of Default (as defined in the Security Agreement) existed. Moreover, RxSport unconditionally and irrevocably consented to the retention by La Potencia of all of the Collateral.

103.    However, Chandler, without authorization, took funds from Plaintiffs' accounts, as well as other RxSport assets, that belonged to Plaintiffs as part of the retention of Collateral. Chandler wrongfully asserted ownership and took possession over those funds and other assets, which was inconsistent with ownership by Plaintiffs.

104.    As a direct and proximate result of Chandler's unauthorized conduct, Plaintiffs have been damaged and are entitled to recover from Chandler all damages resulting from the conversion.

### COUNT VIII
### Misappropriation of Trade Secrets under 18 U.S.C. § 1836 et seq.
### (Both Plaintiffs against Chandler, Group Authentic and MaxBat)

105.    Plaintiffs re-allege and re-aver paragraphs 1-58 as though fully set forth herein.

106.    RxSport previously owned trade secrets and formulas with respect to the CHANDLER BATS.  Chandler agreed in the Loan Agreement to keep all trade secrets and formulas confidential and to not disclose them to third parties for any reason whatsoever.  Thus, Chandler knew that the trade secrets and formulas were to be maintained in absolute confidence and not disclosed to third parties.

107.    As part of the retention of Collateral and RxSport Assignment, RxSport transferred all rights in and to such trade secrets and formulas to La Potencia.  La Potencia licensed the rights in the trade secrets and formulas to YC52.

108.    RxSport, and now Plaintiffs, have taken reasonable measures to keep the trade secrets and formulas confidential, as they are not disclosed to any third parties and kept strictly confidential.  The information in the trade secrets and formulas derives independent economic value, actual and potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or

use of the information.  Among other things, the trade secrets and formulas are used in the manufacturing of CHANDLER BATS.  Those trade secrets and formulas are needed to manufacture CHANDLER BATS.

109.    Chandler and Group Authentic have misappropriated the trade secrets and formulas and disclosed them to vendors and/or other third parties to, among other things, have competing wood bats manufactured for Chandler and Group Authentic's sale and distribution.  For example, Chandler and Group Authentic have disclosed such trade secrets and formulas to MaxBat in connection with MaxBat's manufacturing of the Infringing Goods.

110.    Upon information and belief, MaxBat is aware and has knowledge that the Confidential Information, including trade secrets and formulas, does not belong to Chandler or Group Authentic.  However, MaxBat is using the Confidential Information, including trade secrets and formulas, to manufacture Infringing Goods and/or competing products.

111.    The trade secrets and formulas, as well as Chandler, Group Authentic and MaxBat's misappropriation and use of them, relates to interstate commerce.

112.    As a result of Chandler, Group Authentic and MaxBat's misappropriation and use of Plaintiffs' trade secrets and formulas, Plaintiffs have been damaged and are entitled to recover from Chandler, Group Authentic and MaxBat all damages resulting from such misappropriation and use or, alternatively, a reasonable royalty, in addition to attorneys' fees, costs and exemplary damages.

113.    Additionally, no adequate remedy at law exists, and Plaintiffs are entitled to injunctive relief against Chandler, Group Authentic and MaxBat to prevent their further misappropriation and/or use of the trade secrets and formulas.

## **PRAYER FOR RELIEF**

WHEREFORE**,** Plaintiffs, LA POTENCIA, LLC and YC52, LLC d/b/a CHANDLER BATS, pray for judgment against Defendants, DAVID CHANDLER, GROUP AUTHENTIC, MAXBAT, INCORPORATED, PECOS LEAGUE OF PROFESSIONAL BASEBALL CLUBS, LLC, and BESTBATDEALS.COM as follows:

A.      Finding Defendants liable for infringement of the CHANDLER BATS Marks pursuant to 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a), and otherwise liable for the actions and claims described herein;

B.      For temporary and permanent injunctive relief enjoining Defendants and their respective officers, employees, and agents, and all persons or entities in active concert or participation with Defendants, from:

i.      using the CHANDLER BATS Marks or the Infringing CHANDLER BATS Marks, whether alone or in combination with other words or elements, or any other formative variations thereof or any mark confusingly similar to any of the CHANDLER BATS Marks, in marketing, advertising, selling, and/or providing any of Defendants' goods and services, including on buildings, signage, product labels, websites, social media accounts, source identifiers, on the internet, as or in domain names, email addresses, meta tags, keywords, search engines, Google AdWords, computer source coding, or invisible data;

ii.      falsely designating the origin of the CHANDLER BATS Marks or otherwise creating a false association with either Plaintiff;

iii.      injuring Plaintiffs' goodwill and reputation; and

iv.     doing any other act or thing that would likely induce the belief that Defendants' goods and services are in anyway connected with or sponsored, affiliated, licensed or endorsed by either Plaintiff or otherwise engaging in acts or conduct that would cause confusion as to the source, sponsorship or affiliation of Defendants with Plaintiffs.

C.      Ordering that Defendants, in accordance with 15 U.S.C. § 1116(a), be directed to file with this Court and serve upon Plaintiffs within thirty (30) days after service of the permanent injunction a report in writing under oath, setting forth in detail the manner and form in which Defendants have complied with the permanent injunction;

D.      Ordering Defendants to destroy all goods and services bearing the Infringing CHANDLER BATS Marks, and all documents and materials, including boxes, packaging, stationary, letterhead, business forms, business cards, statements, invoices, signage, webpages, brochures, pamphlets, and advertising and marketing materials bearing the Infringing CHANDLER BATS Marks in accordance with 15 U.S.C. § 1118;

E.      Ordering Defendants to account for all profits derived from Defendants' unlawful use of the Infringing CHANDLER BATS Marks in accordance with 15 U.S.C. § 1117(a);

F.      Ordering Defendants to pay Plaintiffs monetary relief under 15 U.S.C. § 1117(a) in an amount equal to Defendants' profits plus damages sustained by Plaintiffs as a result of Defendants' wrongful actions;

G.      Ordering Defendants to pay Plaintiffs three times Defendants' profits made as a result of Defendants' wrongful actions or three times Plaintiffs' damages, whichever is greater;

H.      Finding that this case is exceptional pursuant to 15 U.S.C. §§ 1117(a), 1117(b), and 1125(c), trebling any damages awarded to Plaintiffs due to Defendants' willful and intentional acts

of trademark infringement, false association, false designation of origin, and unfair competition and awarding exemplary damages for Defendants' willful and intentional acts;

I.      Finding Chandler liable for breach of the Loan Agreement and Security Agreement, as well as his employment arrangement with YC52;

J.      Ordering Chandler to pay La Potencia monetary relief for all damages incurred by La Potencia as a result of Chandler's breach of the Loan Agreement, Security Agreement and employment arrangement with YC52;

K.      For temporary and permanent injunctive relief enjoining Chandler and his respective officers, employees, and agents, and all persons or entities in active concert or participation with Chandler, including any entity owned or controlled by Chandler from:

> i.      competing with Plaintiffs in any manner, including manufacturing, marketing, advertising, promoting, offering for sale, selling and/or distributing baseball bats; and
>
> ii.      soliciting any of Plaintiffs' employees, vendors, customers and/or potential customers;

L.      Ordering Chandler to pay La Potencia monetary relief for all damages incurred by La Potencia as a result of Chandler's conversion;

M.      Enjoining Defendants from registering and/or purchasing any domain name that contains terms that are confusingly similar to the CHANDLER BATS Marks, the Infringing CHANDLER BATS Marks, or any formative variations thereof;

N.      For temporary and permanent injunctive relief enjoining Chandler, Group Authentic, and MaxBat, and their respective officers, employees, and agents, and all persons or entities in active concert or participation with Chandler, Group Authentic and/or MaxBat,

including any entity owned or controlled by Chandler, Group Authentic, and/or MaxBat, from further misappropriating and/or using Plaintiffs' trade secrets and formulas;

O.      Ordering Chandler, Group Authentic and MaxBat to pay Plaintiffs monetary relief under 18 U.S.C. § 1836 for all damages resulting from Chandler, Group Authentic and/or MaxBat's misappropriation and/or use of Plaintiffs' trade secrets and formulas or, alternatively, a reasonable royalty, in addition to exemplary damages;

P.      Awarding Plaintiffs their reasonable attorneys' fees and costs incurred in connection with this action;

Q.      For prejudgment interest according to law;

R.      Finding that Plaintiffs are entitled to recover their costs of Court; and

S.      For such other and further relief the Court deems just and proper.


Dated: March 16, 2022                    Respectfully submitted,

                                        By:   /s/Joshua D. Martin
                                        Joshua D. Martin
                                        Florida Bar No. 028100
                                        josh.martin@johnsonmartinlaw.com
                                        JOHNSON & MARTIN, P.A.
                                        500 W. Cypress Creek Rd., Suite 430
                                        Fort Lauderdale, Florida  33309
                                        Telephone:  (954) 790-6699
                                        Facsimile:  (954) 206-0017

                                        *Attorneys for Plaintiffs, La Potencia, LLC
                                        and YC52, LLC d/b/a CHANDLER BATS*