## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 22-80417-CIV-RUIZ/MAYNARD

**LA POTENCIA, LLC** and
**YC52, LLC** d/b/a **CHANDLER BATS,**

     **Plaintiffs,**

**v.**

**DAVID CHANDLER,** *et al.*,

     **Defendants.**

_____/

### REPORT AND RECOMMENDATION ON DEFENDANTS DAVID CHANDLER AND GROUP AUTHENTIC'S COMBINED MOTION TO DISMISS, STAY, OR TRANSFER AND MEMORANDUM OF LAW IN SUPPORT ("MOTION") (DE 24)

**THIS CAUSE** comes before me upon an Order of Reference, DE 48, and the above Motion.  I have considered the Motion, Response, DE 38, and Reply, DE 41.  Additionally, I have reviewed the Notice of Adopting Arguments Set Forth in Motion to Dismiss, Stay, or Transfer (DE 24) filed by Defendants Pecos League of Professional Baseball Clubs, LLC ("Pecos") and BestBatDeals.com.[1]  DE 35.  Also, on October 4, 2022, I heard oral argument on the Motion. DE 51.  Being otherwise duly advised, I respectfully **RECOMMEND** that Defendants' Motion be **DENIED**.

---

[1] Defendants Pecos and BestBatDeals.com adopted Defendants Chandler and Group Authentic's argument as to dismissal of Count I of Plaintiff's Complaint (DE 1).  DE 35.  Defendants Chandler and Group Authentic, however, state in their Reply that they "voluntarily withdraw the portion of their motion to dismiss attacking Count I and will address that Count as appropriate once the jurisdictional challenge is resolved and any stay is lifted."  DE 41 at n. 1.

## BACKGROUND

Plaintiff La Potencia, LLC ("La Potencia") is the owner of intellectual property rights, among other assets, previously owned by Defendant David Chandler's former company, RxSport, Corp. ("RxSport"), which RxSport surrendered to La Potencia after defaulting on a loan. RxSport was in the business of manufacturing and selling high performance wood baseball bats and ancillary products to Major League Baseball ("MLB") Players and other athletes.

In April 2017, Chandler, as the President and operator of RxSport, entered into a Loan Agreement and related Security Agreement with La Potencia. DE 1 at ¶¶25-26. Under the Loan Agreement, La Potencia provided capital to RxSport to operate RxSport's business of manufacturing, marketing, and selling baseball bats and related products. *Id*. at ¶26. The Loan Agreement provided La Potencia with a security interest in all of RxSport's assets, including its trademarks, as collateral for the loan. *Id*.; DE 1-9. The Loan Agreement also contained a non-compete provision providing that Chandler would not compete with RxSport and La Potencia in any manner or solicit for employment any employee or consultant of RxSport. DE 1 at ¶27 (citing § 4.10(b) of the Loan Agreement). The Loan Agreement also contained a non-disclosure provision prohibiting Chandler from disclosing any of RxSport's confidential information to third parties. *Id*.

On January 10, 2019, RxSport filed Chapter 11 bankruptcy in the Eastern District of Pennsylvania, thereby defaulting on the Loan and Security Agreements. *Id*. at ¶30. On July 18, 2019, legal counsel for La Potencia sent a letter to RxSport regarding its intention to retain collateral as a result of RxSport's default (the July 18, 2019 Letter). DE 1-11. The letter informs RxSport that La Potencia proposes to retain all collateral in which a security interest was granted in satisfaction of the obligations owed by RxSport. The letter states that "[a]s of the date hereof,

the aggregate unpaid balance of the Obligations, including principal, interest and all other charges is $1,084,029.49." DE 1-11 at 3.  RxSport, through Chandler, responded by signing and returning an Acknowledgment and Consent Form.  *Id*. at 4.  The Acknowledgment and Consent Form agrees that RxSport defaulted on the Security Agreement and consents to La Potencia's retention "of the entirety of the Collateral in satisfaction of the Obligations" upon the term's stated in the July 18, 2019 Letter.  DE 1 at ¶¶31-32; DE 1-11.  The collateral included the rights and ownership interests in U.S. Trademark Registration No. 4,503,473 for the mark CHANDLER BATS and U.S. Trademark Registration No. 4,542,834 for the mark C CHANDLER and Design (collectively the "Marks" or the "CHANDLER BATS Marks").

La Potencia licensed the Marks exclusively to Plaintiff YC52, LLC ("YC52").  DE 1-8. YC52 manufactures and sells baseball bats throughout the United States and the world to MLB players, Minor League Baseball players, and other athletes.  DE 1 at ¶17.  After acquiring the license to the Marks, YC52 hired Chandler to work in a similar capacity as he had for RxSport. DE 1 at ¶34.  As part of his responsibilities, Chandler was to assist YC52 with accessing and using RxSport's prior assets, including "trade secrets and formulas."  *Id.* Chandler worked for YC52 from July 2019 through October 2019.  *Id.*

Plaintiffs allege that, while employed at YC52, Chandler worked on forming a new business to compete with Plaintiffs in violation of the Loan Agreement's non-compete provision. DE 1 at ¶35. Plaintiffs further allege that Chandler solicited employees of La Potencia and YC52 to work for his new business and solicited investors and wholesalers to market, sell, and distribute his competing baseball bats.  *Id.* at ¶36.  Further, Chandler communicated to active and retired MLB players his intent to form a new company.  *Id.* at ¶37.

Plaintiffs allege that Chandler – through his new company, Group Authentic—now contracts with Defendant MaxBat, Inc. ("MaxBat") to manufacture allegedly infringing baseball bats. *Id.* at ¶¶44, 47. Plaintiffs contend that Chandler and Group Authentic disclosed trade secrets acquired from RxSport to Defendant MaxBat as well as to third parties. *Id.* at ¶¶38, 51. Furthermore, Plaintiffs allege that Defendant Pecos League of Professional Baseball Clubs, LLC ("Pecos"), an independent baseball league, sells the infringing baseball bats through a link on its website that directs traffic to the online shop of Defendant BestBatDeals.com. DE 1 at ¶¶53, 55.

Plaintiffs bring suit against all Defendants (Chandler, Group Authentic, Maxbat, Pecos, and BestBatDeal.com) for trademark infringement under 15 U.S.C. § 1114 (Count I), trademark infringement under 15 U.S.C. § 1125(a) (Count II), false association under 15 U.S.C. § 1125(a) (Count III), false designation of origin under 15 U.S.C. § 1125(a) (Count IV), and unfair competition under Florida common law (Count V). Plaintiffs also sue David Chandler for breach of contract (Count VI) and conversion (Count VII), and sues Chandler, Group Authentic and MaxBat for misappropriation of trade secrets under 18 U.S.C. § 1836, *et. seq.* (Count VIII).

Chandler and Group Authentic (together "Group Authentic") now move to dismiss this action for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) or, in the alternative, to dismiss Counts VI and VIII for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and for transfer of the balance of the case to the U.S. District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1404(a), 28 U.S.C. § 1406(a), and Fed. R. Civ. P. 12(b)(3). *Id.*

## **STANDARD OF REVIEW**

When considering a motion to dismiss for lack of personal jurisdiction, a court must accept the facts alleged in the complaint as true, unless they are contradicted by defendant's affidavits. *See Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988); *Corneal v. CF Hosting, Inc.*, 187 F.

Supp.2d 1372, 1373 (S.D. Fla. 2001); *Venetian Salami Co. v. Parthenais*, 554 So.2d 499, 502 (Fla. 1989).  If the complaint pleads facts sufficient to form a basis for personal jurisdiction, the burden shifts to the nonresident defendant to challenge the plaintiff's allegations by affidavits or other pleadings.  *See Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000); *Venetian Salami Co.*, 554 So.2d at 502.  If the defendant meets this burden, the plaintiff must then substantiate the jurisdictional allegations made in the complaint by affidavits or other competent proof.  *Id.*  "The court must construe all reasonable inferences in favor of the plaintiff." *Meier ex. Rel. Meier v. Sun Intern. Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002).

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint on the basis that it fails to state a claim upon which relief can be granted.  When considering such a motion, a court must accept the factual allegations pleaded in the complaint as true and must construe the complaint in the light most favorable to the plaintiff.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).  A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face" so as to "nudge his claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In determining whether the plausibility standard has been met, a court must consider the pleading as a whole and must draw on judicial experience and common sense.  *Id.*; *see also Speaker v. U.S. Department of Health and Human Services Centers for Disease Control and Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010) (citations omitted).

A plaintiff is not required to detail all the facts on which his claim is based; rather, Rule 8(a)(2) requires only a short and plain statement that fairly notifies the defendant of what the claim

is and the grounds on which it rests. *Twombly*, 550 U.S. at 555–56; *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). The allegations must, however, be enough to raise a right to relief above the speculative level. *Id*. The Federal Rules demand "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 662. "Mere 'labels and conclusions or a formulaic recitation of the elements of a cause of action will not do,' and a plaintiff cannot rely on 'naked assertions devoid of further factual enhancement.'" *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (citation omitted). "[I]f allegations are indeed more conclusory than factual, then the court does not have to assume their truth." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012).

## **DISCUSSION**

### I.      **Defendants' Motion to Dismiss for Lack of Personal Jurisdiction**

Since "[a] court without personal jurisdiction is powerless to take further action," *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 n. 6 (11th Cir. 1999), I first consider Defendants' argument that personal jurisdiction is lacking in this case.

Regarding personal jurisdiction, the Complaint alleges as follows:

> 11.     The Court has personal jurisdiction over Chandler because he operates, conducts, engages in, and carries on business in Florida, committed a tortious act within Florida, including within this judicial district, and caused injury to persons within Florida, Among other things, Chandler is having manufactured on his behalf (and/or manufacturing), offering for sale, selling and/or distributing infringing goods at issue in this case within Florida, including within this District, and is causing injury to Plaintiffs in Florida. Moreover, Chandler defaulted under an agreement governed by Florida law by failing to perform acts in Florida, as set forth in more detail below, and Chandler consented to jurisdiction and venue in Florida in the subject agreement.     Thus, this Court's exercise of personal jurisdiction over Chandler is consistent with the Constitution of the United States and Fla. Stat. § 48.193.

12.   This Court has personal jurisdiction over Group Authentic because it operates, conducts, engages in, and carries on business in Florida, committed a tortious act within Florida, including within this judicial district, and caused injury to persons within Florida. Among other things, Group Authentic is having manufactured on its behalf (and/or manufacturing), offering for sale, selling, and/or distributing infringing goods at issue in this case within Florida, including within this District, and is causing injury to Plaintiffs in Florida.   Thus, this Court's exercise of personal jurisdiction over Group Authentic is consistent with the Constitution of the United States and Fla. Stat. § 48.193.

13.   This Court has personal jurisdiction over MaxBat because it operates, conducts, engages in, and carries on business in Florida, committed a tortious act within Florida, including within this judicial district, and caused injury to persons within Florida.   Among other things, MaxBat is manufacturing, offering for sale, selling, and/or distributing infringing goods at issue in this case within Florida, including within this District, and is causing injury to Plaintiffs in Florida.   Thus, this Court's exercise of personal jurisdiction over MaxBat is consistent with the Constitution of the United States and Fla. Stat. § 48.193.[2]

14.   This Court has personal jurisdiction over BestBatDeals.com because it operates, conducts, engages in, and carries on business in Florida, committed a tortious act within Florida, including within this judicial district, and caused injury to persons within Florida. Among other things, BestBatDeals.com is offering for sale, selling, and/or distributing infringing goods at issue in this case within Florida, including within this District, and is causing injury to Plaintiffs in Florida.   Thus, this Court's exercise of personal jurisdiction over Pecos is consistent with the Constitution of the United States and Fla. Stat. § 48.193.[3]

DE 1 at ¶¶ 11-14.

---

[2]  MaxBat challenges whether this Court has personal jurisdiction over it in MaxBat's Motion to Dismiss.  DE 23.   I will address MaxBat's arguments in a separate report and recommendation on MaxBat's motion to dismiss.

[3] Pecos and BestBatDeals.com have not challenged personal jurisdiction.  *See Noveshen v. Bridgewater Assocs., LP*, No. 13-CV-61535-KAM, 2015 WL 11170928, at *2–3 (S.D. Fla. July 20, 2015) (discussing waiver of personal jurisdiction).

In their motion to dismiss, Chandler and Group Authentic contend that there is no basis for this Court to exercise personal jurisdiction over them.  In support, they submit the affidavit of Defendant Chandler, President and Founder of RxSport and Manager Member of Group Authentic. Chandler Aff., DE 24-1.  In his affidavit, Mr. Chandler states that he has at all relevant times been a resident and citizen of Pennsylvania; he does not own or lease any offices, real estate or equipment, or own any other form of property in Florida; he does not manufacture baseball bats or any other goods in Florida; and he has not sold any bats in Florida after being fired by YC52. *Id*. at ¶¶43-46.   Mr. Chandler states that Group Authentic's corporate headquarters are in Montgomery County, Pennsylvania; it has no officers, employees, subcontractors or vendors in Florida; it does not own or lease any offices, real estate or equipment or own any form of property that is located in Florida; it does not manufacture baseball bats or any other goods in Florida; it does not have bats or other goods made in Florida on its behalf; and it has not sold any bats in Florida. *Id*. at ¶¶ 37-40.

In their opposition memorandum, Plaintiffs assert that personal jurisdiction over Chandler and Group Authentic is proper on two grounds.  First, Plaintiffs point out that Chandler agreed to jurisdiction and venue in Florida in the Loan Agreement that is the subject of Plaintiffs' breach of contract claim.  DE 38 at 5-6.  Plaintiffs therefore argue that the Loan Agreement (DE 1-9), dated April 27, 2017, provides for jurisdiction in Florida "at least as to David Chandler."  DE 38 at 5. Second, Plaintiffs contend that personal jurisdiction is proper under Florida's Long Arm Statute, Fla. Stat. § 48.193(1)(a)(2), and the United States Constitution.  *Id*. at 6-12.  I consider each these arguments in turn.

## A. Personal Jurisdiction Based on the Forum Selection Clause in the Loan Agreement

Plaintiffs fail to demonstrate that the Loan Agreement's forum selection clause confers personal jurisdiction in this case.  The Loan Agreement's forum selection clause provides: "The *parties* agree to the Circuit Courts in and for Palm Beach County, Florida as the exclusive jurisdiction and venue for any cause of action under this [A]greement[.]"  DE 1-9 at 19, ¶7.11 (emphasis added).  This provision does not convey personal jurisdiction in this court for two reasons.  First, Chandler and Group Authentic are not defined as parties in the Loan Agreement.[4] Indeed, the "Loan Agreement defines its parties exclusively as RxSport, Inc. and La Potencia, LLC[,]" and the agreement's definition of parties does not include David Chandler or Group Authentic.  DE 41 at 2-3.  Thus, Defendants contend correctly that the forum selection provision does not bind them because they were not parties agreeing to be bound by the forum selection clause.  Second, those who are defined as parties to the Loan Agreement consented to the *exclusive* jurisdiction of the Circuit Courts in Palm Beach County.  They did not agree to the jurisdiction of any federal court, including this one.  Mandatory forum selection clauses, as opposed to permissive ones, designate an exclusive forum for litigation and prohibits litigation elsewhere.  *Brown v. Press Repair Eng'g Sales & Serv., Inc.*, No. 8:08-CV-1115-T-23TGW, 2008 WL 5263748, at *1 (M.D. Fla. Dec. 17, 2008) (citing *Global Satellite Commc'n Co. v. Starmill U.K. Ltd.*, 378 F.3d 1269, 1272 (11th Cir. 2004)).  Here, the clause is mandatory and limits litigation to the Circuit Courts of the State of Florida in Palm Beach County.  Therefore, the forum selection clause is inapplicable and does not assist Plaintiffs with establishing that personal jurisdiction exists with respect to Defendants Chandler and Group Authentic.

---

[4] Defendants acknowledge that David Chandler joined a Loan Agreement, dated April 27, 2017, between RxSport as Borrower and La Potencia as Lender "for the purpose of agreeing to the provisions thereof applicable to Chandler." DE 41 at n.2 (quoting DE 1-9 at 21); DE 24 at 4 (same).

### B.  Personal Jurisdiction based on Florida's Long Arm Statute and Due Process

Because "[f]ederal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons[,]" *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014), a federal court in Florida may properly exercise personal jurisdiction only if the requirements of Florida's long arm statute and the Due Process Clause of the Fourteenth Amendment to the United States Constitution are both met.  *Posner*, 178 F.3d at 1214.  A federal court in Florida considering personal jurisdiction evaluates two questions: (1) whether personal jurisdiction exists under Florida's long arm statute, and (2) whether exercising that jurisdiction would violate the Due Process Clause of the Fourteenth Amendment.  *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339 , 1350 (11th Cir. 2013); *see also D.W. Mercer, Inc. v. Valley Fresh Produce, Inc.*, 146 F. Supp. 2d 1274, 1276 (M.D. Fla. 2001) (*citing Robinson v. Giarmarco & Bill, P.C.,* 74 F.3d 253, 256 (11th Cir. 1996)) (Court first will consider Florida's long arm statute and then will consider "whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment so that maintenance of the suit does not offend traditional notions of fair play and substantial justice.").

### 1.  The Florida Long Arm Statute, Fla. Stat. §48.193

Although the Complaint alleges that Chandler and Group Authentic "operate[], conduct[], engage[] in, and carr[y] on business in Florida," in their opposition memorandum Plaintiffs confine their argument on Florida's long arm statute to the contention that Defendants have committed a tortious act in this state.  My analysis is therefore limited to this argument.

Fla. Stat. § 48.193(1)(a)(2) allows for personal jurisdiction in Florida over nonresident defendants who "commit a tortious act within" Florida.  Fla. Stat. § 48.193(1)(a)(2) (2014).  This provision "permits jurisdiction over the nonresident defendant who commits a tort outside of the state that causes injury inside the state." *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (2008)

(citing *Posne*, 178 F.3d at 1216).  "It is well-settled in the Eleventh Circuit that trademark claims under the Lanham Act allege tortious acts for long arm purposes, *Louis Vuitton*, 736 F.3d at 1353, and that out-of-state infringement causing injury in Florida satisfies the statute, *Licciardello*, 544 F.3d at 1283." *PG Creative Inc. v. Affirm Agency, LLC*, 2019 WL 5684219, at *4 (S.D. Fla. Oct. 31, 2019) (*citing Honus Wagner Co. v. Luminary Group LLC*, 2017 WL 6547899, at *8 (S.D. Fla. Dec. 21, 2017) (collecting cases finding long arm jurisdiction for tortious out-of-state conduct that caused in-state harm)).  Although the Eleventh Circuit has not conclusively determined that trademark injury necessarily occurs where the owner of the mark resides, *see Licciardello*, 544 F.3d at 1283, district courts in Florida have consistently held that "[i]njury from trademark infringement occurs in the state where the trademark owner resides."  *See*, *e.g.*, *Nida Corp. v. Nida*, 118 F. Supp.2d 1223, 1228 (M.D. Fla. 2000); *see also USA Mgmt. Grp., LLC v. Fitness Publications, Inc.*, 2015 WL 11233075, at *2 (S.D. Fla. Mar. 4, 2015); *R&R Games, Inc. v. Fundex Games, Ltd.*, 2013 WL 784397, *2 (M.D. Fla. March 1, 2013); *JB Oxford Holdings, Inc. v. Net Trade, Inc.*, 76 F. Supp.2d 1363, 1366-68 (S.D. Fla. 1999).

Defendants ignore this line of cases and instead focus their argument on the fact that they do not operate or conduct any business in Florida.  Yet, case law makes clear that specific jurisdiction under Fla. Stat. § 48.193(1)(a)(2) does not require nonresident defendants to operate in Florida or conduct business here.  Here, it is undisputed that the principal places of business for both Plaintiffs are in Florida and Plaintiff YC52 is a Florida limited liability company.  Thus, Plaintiffs reside in Florida and any trademark injury that has occurred has been suffered in Florida.  Accordingly, Florida's long arm statute requirements are met.

## 2. Due Process

Next, I address whether exercising jurisdiction in this case comports with the requirements of due process. "[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (*quoting Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

In determining whether the requirements of due process are met, courts employ a three-part due process test. *Louis Vuitton*, 736 F.3d at 1355. The first prong addresses "whether the plaintiff's claims arise out of or relate to at least one of the defendant's contacts with the forum." *Id.* (internal quotation marks and citations omitted). The second prong addresses "whether the nonresident defendant purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws." *Id.* The third prong addresses "whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice." *Id.* Plaintiff carries the burden to establish the first two prongs. *Id.* "[I]f plaintiff does so, a defendant must make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.* (internal quotation marks and citation omitted).

### i. Arising out of or Relatedness

To satisfy the first prong, Plaintiffs' claims must "arise out of or relate to at least one of the defendant's contacts with the forum." *Louis Vuitton*, 736 F.3d 1355. This inquiry "focus[es] on the direct causal relationship between the defendant, the forum, and the litigation." *Id*. at 1355-56. Importantly, not just any contacts will do: "For a State to exercise jurisdiction consistent with

due process, the defendant's *suit related* conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (emphasis added). The "mere fact that [defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." *Id*. at 291. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at 290. Moreover, the relationship between the forum and the defendant "must arise out of contacts that the 'defendant *himself*' creates with the forum…." *Id*. at 284 (emphasis added) (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Contacts between the plaintiffs or other third parties and the forum are not sufficient. *Id*.

Plaintiffs are not required to establish that their claim came about *because of* Defendants' in-state conduct, however. The Eleventh Circuit previously held that "a tort 'arises out of or relates to' the defendant's activity in a state only if the activity is a 'but-for' cause of the tort." *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1314 (11th Cir. 2018). The Supreme Court rejected this but-for causation requirement in *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021) (hereinafter, *Ford*). *See Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1238 (S.D. Fla. 2021) (holding that *Ford* overruled the Eleventh Circuit's ruling in *Waite*). The Supreme Court explained that, while the first part of the "arise out of or relate to" requirement necessitates causation, the second part – the "relate to" portion – contemplates that jurisdiction is possible without a causal showing. *Ford*, 141 S. Ct. at 1026. A close relationship between the defendant's contacts with the forum and the plaintiff's claims can also suffice. *Id*. at 1032.

Here, I find Plaintiffs have established a close relationship between Chandler and Group Authentic's contacts with Florida and Plaintiffs' claims. Plaintiffs allege that that Chandler and Group Authentic are manufacturing, promoting, and selling baseball bats that infringe Plaintiffs'

trademarks.   According to Plaintiffs, Defendants' infringing marks are nearly identical to Plaintiffs' marks and Defendants are competing with Plaintiffs by marketing, selling, and providing goods that are identical to YC52's products, namely wood baseball bats and ancillary goods. DE 1 at ¶¶42-43.  Further, Defendants are targeting identical consumers, namely Major League Baseball players and other athletes, by providing samples of the infringing products to Major League Baseball "in an attempt to get on the approved list of Major League Baseball bat suppliers[.]"  *Id.* at ¶44.

In an affidavit, Defendant Chandler admits that Group Authentic did in fact ship 30 free "sample" baseball bats to Florida in 19 separate shipments in response to requests from professional baseball players.    DE 24-1 at 11. This admission supports Plaintiffs' position that Group Authentic is targeting its marketing and promotional efforts towards Florida.  Plaintiff YC52's CEO, Benjamin Chase, explains why.  In his affidavit, Mr. Chase states that spring training occurs annually in Florida for fifteen of the 30 MLB teams, of which two—the Miami Marlins and the Tampa Bay Rays—are headquartered here.  DE 38-1 at ¶¶6, 8.  This year players from the Philadelphia Phillies (who train in Clearwater, Florida), the Baltimore Orioles (who train in Sarasota, Florida), the Minnesota Twins (who train in Fort Myers, Florida), and the Houston Astros (who train in West Palm Beach, Florida) were seen by YC52 employees in Florida using Defendants' infringing bats during spring training. *Id.* at ¶10.  Importantly, Mr. Chase attests that "David Chandler and Group Authentic are actively marketing, promoting and selling David Chandler's new infringing baseball bats to Major League Baseball teams and players – the very same teams and players to which YC52 sells its Chandler bats." DE 6-1 at ¶16.  Mr. Chase knows this because "YC52's salesmen are currently on site throughout many Major League Baseball team spring training camps.  David Chandler and his sales team are also present at many of the spring

training camps promoting his infringing bats." *Id*. at ¶17.  For example, Mr. Chase has personally "seen an unpublished video that indicates that either David Chandler or one of his sales team members were present at the Baltimore Orioles spring training camp in Sarasota, Florida this year." De 38-1 at ¶11.

Notably, despite filing a 22-page affidavit with 200 pages of attachments, Chandler and Group Authentic do not dispute that representatives of Group Authentic are attending spring training camps throughout Florida to market and promote their baseball bats to Major League Baseball teams and players.[5]  Although Chandler declares that he and Group Authentic have not sold any goods in Florida, he does not deny marketing and promoting his baseball bats in Florida. This omission combined with Chandler's admission of sending 30 bats to Florida as free promotional products supports Mr. Chase's testimony that Group Authentic is actively marketing to MLB players and teams in Florida.  In addition, Chandler admits making his bats available online, DE 24-1 at ¶53, and two MLB teams are headquartered in Florida.  Such contacts with Florida – namely, sending sales representatives to spring training camps in Florida and shipping free bats to MLB teams and players in Florida –are directly connected to Plaintiffs' claims in this litigation.  Specific jurisdiction must rest on the *litigation-specific* conduct of the defendant in the proposed forum state, and here Plaintiffs have demonstrated such litigation specific conduct. Group Authentic does not deny that its representatives were present at spring training camps to market and promote Defendants' products, and Group Authentic admits shipping promotional products to Florida to MLB players.   I therefore find the relatedness element has been met.

Defendants rely on a single case from the Northern District of Georgia, *Neenah, Inc. v. Mohawk*, 2019 WL 2080267 (N.D. Ga. February 5, 2019), to support their claim that sending 19

---

[5] Defendant Chandler attests that "Group Authentic, LLC went through the certification process for the 2022 season and was certified as a bat supplier for Major League Baseball in January 2022."  DE 24-1 at 12, ¶47.

shipments of 30 baseball bats to Major League Baseball players in Florida is insufficient to establish personal jurisdiction under Florida's long arm statute or the Constitution.  *See* DE 24 at 9 (relying on *Neenah* to argue that the requirements of Florida's long arm statute are not met) and at 12 (relying on *Neenah* to argue that "donating bats" is not enough to meet the relatedness requirement under the due process analysis).  Although *Neenah* is not binding on or dispositive of this Court's determination, I address its reasoning below.

In *Neenah*, the plaintiff ("Neenah"), a distributor of commercial paper and envelopes, sued Crane Stationary LLC ("Crane") and its successor in interest, Mohawk Fine Papers, Inc. ("Mohawk"), for breach of a trademark and licensing agreement giving Plaintiff the right to produce, market, and distribute Crane paper products.  Crane and Mohawk moved to dismiss for lack of personal jurisdiction since they were not registered to do business in Georgia, did not manufacture products there, and did not maintain any office, real property or financial accounts there. *Neenah*, 2019 WL 2080267, \*4.  In undertaking the two-step personal jurisdiction analysis, the court first considered whether the exercise of jurisdiction was appropriate under Georgia's long arm statute, O.C.G.A. § 9-10-91 (1).  The court noted that the section of the Georgia long arm statute at issue provided that a Georgia court may exercise personal jurisdiction over a nonresident defendant that "transacts any business within" Georgia.  The court explained that this particular provision grants personal jurisdiction over a nonresident defendant if "(1) the nonresident defendant has purposefully done some act or consummated some transaction in [Georgia], (2) if the cause of action arises from or is connected with such act or transaction, and (3) if the exercise of jurisdiction by the courts of this state does not offend traditional fairness and substantial justice." *Id*. at 3 (quoting *Henriquez v. El Pais O'Hubocali.com*, 500 F. App'x 824 (11th Cir. 2012) (internal quotation omitted)).  Neenah argued that Mohawk and Crane transacted business in Georgia

because their employees placed marketing calls to customers in Georgia, supported regional events in Georgia, sent marketing materials to customers in Georgia, offered free samples on their website, and sent free samples to a customer in Georgia. *Id*. at 4. The court reasoned that, even "[a]ssuming that all of these activities qualify as transacting business in Georgia, Plaintiff has failed to demonstrate how Plaintiff's claims in this suit against Mohawk arise from, or are connected with, such activities. None of these activities are connected to or arise from the Agreement or concern Plaintiff's Lanham Act claims about Mohawk's alleged disparaging public statements." *Id*. It was in this context the court went on to say: "As for Mohawk providing free samples of products produced under the Agreement pursuant to a request from a Georgia customer, the Court finds that this is not sufficient contact for personal jurisdiction." *Id*. (citing *Jordan Outdoor Enterprises, Ltd. v. That 70's Store, LLC*, 819 F. Supp.2d 1338, 1343 (M.D. Ga. 2011)).

*Neenah's* determination that shipping free sample products to one customer was insufficient to convey personal jurisdiction is based on the facts present in that case and not applicable here for several reasons. First, with respect to the first part of the personal jurisdiction inquiry, *Neenah* involved Georgia's long arm statute, not Florida's long arm statute. The provisions at issue are markedly different and under the Florida provision at issue here the Plaintiffs are not required to show Defendants transacted business in Florida. Second, in *Neenah*, the Defendants sent sample products to a single customer in Georgia. Here, Defendants sent samples to Florida 19 times to various MLB players and Plaintiffs allege this was done in "an attempt to get on the approved list of Major League Baseball bat suppliers[.]" DE 1 at ¶44. Third, the court in *Neenah* found no connection between Crane and Mohawk's marketing activities in Georgia and the plaintiff's claims. Here, I find that Group Authentic's contacts with Florida – namely, sending sales representatives to market products at spring training camps in Florida and

shipping free bats to MLB teams and players in Florida –are directly connected to Plaintiffs' claims in this litigation.   In *Neenah* the defendants submitted evidence directly establishing that their marketing efforts in Georgia had nothing to do with the agreement at issue in that case.   *Neenah*, 2019 WL 2080267, \*4.   Group Authentic offers no comparable evidence disputing Mr. Chase's declaration that Group Authentic sales representatives are present at spring training camps in Florida promoting and marketing their allegedly infringing products.   I therefore do not find *Neenah's* reasoning persuasive under the facts present here.

I am, however, persuaded by Judge Moreno's reasoning in *GLD*, *LLC v. Gold Presidents, LLC*, 2021 WL 148737 (S.D. Fla Jan. 15, 2021).   In *GLD*, the plaintiff sued nonresident defendants in Florida for trademark infringement because the defendants offered a watch for sale that was very similar to a watch design owned by Plaintiffs.   Notably, although the watch was offered for sale on a website accessible and indeed allegedly accessed in Florida, no sales were completed. Defendants moved to dismiss for lack of personal jurisdiction.   Judge Moreno found the requirements of Florida's long arm statute met because a trademark claim is an intentional tort for long arm purposes and the alleged trademark infringement caused injury in Florida.   *Id*. at \*2 (*citing Licciardello*, 544 F.3d at 1283 and *Louis Vuitton*, 736 F.3d at 1354).   Judge Moreno did not find actual sales to be required to satisfy Florida's long arm statute, *id*. at \*2-3.   Moreover, in conducting the due process analysis, Judge Moreno noted that "[d]efendant aimed to  sell its watch in Florida, even though the sale was not completed" and "[d]efendant knew that its conduct would cause injury in Florida because it knew that Florida customers had purchased from the site before." *Id*. at 3.   Similarly, although Plaintiffs in this case have not established *sales* in Florida, they have offered evidence that Group Authentic and Chandler *aimed to sell* their products to MLB players

at spring training camps in Florida and knew their conduct would cause injury in Florida because Florida is where Plaintiffs are located.

### ii.    Purposeful Availment

In intentional tort cases such as trademark infringement, there are two applicable tests to determine whether a defendant has "purposefully availed" himself to the forum state:   the traditional "minimum contacts" test, *see Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 779-80 (1984), and the "effects test," *see Calder v. Jones*, 465 U.S. 783, 789 (1984).  *See Louis Vuitton*, 736 F.3d at 1356-57.

Under the traditional minimum contacts test, a court considers whether the defendant's contacts with the forum state "(1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum." *Louis Vuitton*, 736 F.3d at 1357.  To conduct this analysis, the court "identif[ies] all contacts between the nonresident defendant and a forum state and ask[s] whether, individually or collectively, those contacts satisfy these criteria." *Id*.

Plaintiffs have shown purposeful availment under the minimum contacts test.  Group Authentic purposefully availed itself of the Florida forum in such a way that it could reasonably anticipate being haled into a Florida court.  Specifically, Group Authentic representatives traveled to Florida to promote and market allegedly infringing goods at spring training camps in Florida and Group Authentic shipped baseball bats into Florida to MLB players and teams 19 times.  These contacts were not random, fortuitous, or attenuated.  As a result, purposeful availment for due process purposes is shown here.

Under the effects test, a nonresident defendant's single tortious act can establish purposeful availment even if a defendant does not have any additional contacts with the forum state. *See Licciardello*, 544 F.3d at 1285 (*citing Calder*, 465 U.S. 783). The effects test is met when the tort was "(1) intentional; (2) aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." *Id*. (citations omitted).

While I agree that the effects test is met, I do so on different grounds that Plaintiffs put forth. Plaintiffs argue that the effects test is satisfied here primarily because trademark infringement is an intentional tort directed towards the state in which the plaintiff is domiciled. Since Plaintiffs have their principal places of business here in Florida, Plaintiffs assert that Defendants' intentional conduct – trademark infringement – is necessarily aimed at the state of Florida. DE 38 at 10 (*citing R&R Games*, 2013 WL 3729309 at *6 and *Remember Everyone Deployed Inc. v. AC2T, Inc.*, 2021 WL 1200421 (S.D. Fla. Mar. 8, 2021)).

Plaintiffs' argument – that the effects test is met primarily because Plaintiffs suffered harm in Florida – does not comport with governing law. In *Walden*, 571 U.S. 277, the United States Supreme Court clarified the *Calder* effects test by stating that the "plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id*. at 285-86 (*citing Burger King*, 471 U.S. at 478). Thus, the effects test is not met solely because plaintiffs suffered harm in the forum state. The test requires that defendant's conduct be itself specifically "aimed at the forum state." Here, that requirement is satisfied. The Complaint alleges that Defendants committed the intentional tort of trademark infringement. The record shows that Group Authentic "aimed [their conduct] at the forum state" by sending representatives to Florida to promote and market Group Authentic's baseball bats at spring training camps and by shipping

30 bats to Florida to MLB players as promotional "freebies."  Since Plaintiffs are domiciled in Florida, Chandler and Group Authentic could anticipate that harm caused by their conduct would be suffered in Florida.  I therefore find the requirements of the effects test are met in this case. Under the minimum contacts test or the effects test, I conclude that Defendants purposefully availed themselves of the privilege of conducting business in Florida.

### iii.    Fair Play and Substantial Justice

"In evaluating 'fair play and substantial justice,' courts consider (1) the burden on the defendant, (2) the forum State's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several state in furthering fundamental substantive social polic[y]. *R & R Games, Inc. v. Fundex Games, Ltd.*, No. 8:12-CV-01957-JDW, 2013 WL 3729309, at *7 (M.D. Fla. July 12, 2013) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477-78 (1985)).

Defendants argue that the burden litigation in Florida would place on them "could deprive [them] of their day in Court" and do not address the other factors.  DE 24 at 13.  Defendant Chandler attests that litigating in Florida would be burdensome due to a lack of resources.  DE 24-1 at 20, ¶68.  He avers that Group Authentic does not own any real estate, has at all times operated in the red, is running with a net deficit without turning a profit and does not own any machinery or manufacturing equipment.  *Id.* at 20, ¶69.  Essentially, it is a start-up and has less than $100,000 in tangible asset value, no physical office and no employees.  *Id.*  Chandler testifies, as to himself, that he rents his residence and vehicles, does not own any real estate, vehicles, or stock and, exclusive of qualified retirement funds, has a net worth under $100,000.  *Id.* at 21, ¶70.

"Generally, however, the burden imposed on out-of-state defendants is not unfair because 'modern transportation and communications have made it much less burdensome' for a party to defend itself in a foreign jurisdiction." *R & R Games, Inc. v. Fundex Games, Ltd.*, 2013 WL 3729309, at *7 (quoting Burger King Corp., 471 U.S. at 474). For example, in *H.E.R.O., Inc. Self*, the Court found a *pro se* litigant's lack of resources warranted little weight because such circumstances present a barrier to litigation wherever it occurs and because modern conveniences "have mostly ameliorated the burdens of defending suit in another state." No. 12-60038-CIV, 2012 WL 1802431, at *6-7 (S.D. Fla. May 17, 2012) (citing, among other cases, *Sculptchair, Inc. v. Century Arts*, 94 F.3d 623, 632 (11th Cir.1996)). *See also Zelinski v. Shurwest, LLC*, No. 219CV804FTM38MRM, 2021 WL 765469, at *3 (M.D. Fla. Feb. 26, 2021) (finding that defendant did not meet its *substantial* burden to show inconvenience and stating that "with e-discovery and Zoom quickly supplanting the need for most in-person proceedings, it realistically makes little difference whether this case is litigated in Arizona or Florida"); *Bank of New York Mellon v. 251 Gotham LLC*, 604 B.R. 71, 80 (Bankr. S.D. Ala. 2019) (finding that defendant being "a small entity of limited financial resources" did not rise to the level of showing constitutional inconvenience and noting that the "court routinely allows parties and attorneys to participate telephonically in hearings"); *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 947 (11th Cir. 1997) ("[I]t is only in highly unusual cases that inconvenience will rise to a level of constitutional concern.). Here, for similar reasons, Defendants' lack of financial resources fails to show that litigating in Florida is unfair. Modern transportation and communications make it reasonable to require them to do so, and a lack of financial resources presents a challenge in any forum.

As to the other factors, I find that at least two others weigh in favor of jurisdiction. First, given Plaintiffs' residency here, Florida has an interest in providing them a convenient forum for redress. Second, Plaintiffs have an interest in obtaining convenient and effective relief by litigating in Florida.

While the parties do not address the other factors, even if they are considered neutral, Defendants have clearly not carried their burden to make a compelling case that this Court's exercise of jurisdiction would be unreasonable. Thus, I conclude that the third prong of due process is also satisfied.

In summary, I find that personal jurisdiction exists with respect to Defendants Chandler and Group Authentic. I next consider Group Authentic's motion to dismiss for failure to state a claim under Rule 12(b)(6) and motion to transfer venue.

## II.      Defendants' Motion to Dismiss under Rule 12(b)(6)

Chandler and Group Authentic move to dismiss counts VI (breach of contract) and VIII (misappropriation of trade secrets) pursuant to Fed. R. Civ. P. 12(b)(6).[6] DE 24 at 1, 14-16. For the reasons that follow, I recommend that Defendants' motion to dismiss counts VI and VIII be denied.

### A. Count VI – Breach of Contract

Plaintiffs allege in Count VI that Chandler breached the Loan Agreement by, among other things, failing to deliver all of RxSport's assets to La Potencia as required and/or by taking assets that were to be acquired by La Potencia before La Potencia could access them. DE 1 at ¶95. Specifically, the Complaint alleges that

---

[6] Defendants voluntarily withdraw the portion of their motion to dismiss attacking Count I per their Reply (DE 41 at n. 1).

95.     Chandler withdrew funds from YC52 accounts for personal use that should have been acquired by La Potencia as part of the retention of Collateral.  Chandler also used YC52 credit cards for personal use.  Chandler also failed to provide YC52 information concerning the location of, and failed to provide proper access to, the trade secrets and formulas used for CHANDLER BATS. …

96.  Chandler also breached the Loan Agreement by violating the non-compete provisions. Chandler agreed to be bound by the non-compete until all obligations under the Loan Agreement were satisfied. Because Chandler failed to deliver all of the assets as part of the retention of Collateral, the obligations were not fully satisfied, and the non-compete remains in full force and effect.  However, Chandler is marketing, having manufactured, offering for sale, selling, and distributing, among other things, wood baseball bats, which is in direct competition to Plaintiffs.

DE 1 at ¶¶ 95-96.

Defendants argue that Count VI fails because it alleges that Defendants have not met their obligations under the Loan and Security Agreements, but La Potencia attached the July 18, 2019 Letter to the Complaint, which – according to Defendants – demonstrates that Chandler's obligations under the Security Agreement have already been met.  DE 24 at 14 (quoting Complaint ¶96).

In the July 18, 2019 Letter, La Potencia's counsel informs RxSport that La Potencia proposes to retain all collateral in satisfaction of the obligations owed.  In response, Chandler signed and return an Acknowledgment and Consent Form, in which he consents to La Potencia's retention of the collateral in satisfaction of the obligations owed.  *Id*.  Defendants argue that this document proves "all obligations have been performed and thus the non-compete is over."  DE 24 at 14.  In their reply, Defendants further contend that the exchange represents an accord and satisfaction such that Plaintiffs no longer have a claim for breach of the Loan Agreement.  *Id.* at 12.

Defendants' argument is unpersuasive.  At this stage of the case, I must determine whether Plaintiffs have adequately stated a claim for breach of contract.  I find that they have.  Under Florida law, the elements of a breach of contract action are (1) a valid contract; (2) a material breach; and (3) damages.  *Gibson v. Lynn Univ., Inc.*, 504 F. Supp. 3d 1335, 1339 (S.D. Fla. 2020) (citing *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999)).  Here, Plaintiffs claim Chandler agreed to a non-compete provision until all obligations of the Loan Agreement were satisfied, the obligations have not been satisfied, Chandler is violating the non-compete provision, and that Plaintiffs have been damaged.  Plaintiffs attach the Loan Agreement which provides at Section 4.1(b) that Chandler agreed not to compete in the same business "until the Loan [is] paid in full and all obligations to Lender [are] satisfied."  DE 1-9 at 13.  Contrary to Defendants' assertion, the letter from La Potencia's counsel and Chandler's subsequent signed consent form do not prove the obligations were met.  If anything, in conjunction with other allegations in the complaint, these documents suggest that though Chandler agreed to turn over all collateral, he did not do so.  DE 1 at ¶95.  For example, it is alleged that instead of turning over the assets, Chandler withdrew funds for his personal use that should have been turned over to La Potencia, used credit cards for personal use, and failed to give Plaintiffs information concerning the location of other assets.  *Id.*  These allegations are sufficient to survive a motion to dismiss.

### B.  Count VIII – Misappropriation of Trade Secrets under 18 U.S.C. § 1836 *et seq.*

"A plaintiff bringing a claim under [18 U.S.C. § 1836 *et seq.*] must plausibly allege that it (i) possessed information of independent economic value that (a) was lawfully owned by the plaintiff and (b) for which the plaintiff took reasonable measures to keep secret, and (ii) the defendant used and/or disclosed that information, despite (iii) a duty to maintain its secrecy." *Trinity Graphic, USA, Inc. v. Tervis Tumbler Co.*, 320 F. Supp. 3d 1285, 1293 (M.D. Fla. 2018).

Whether information is a trade secret is a question of fact typically resolved at trial.  *See id.* (citing *Lear Siegler, Inc. v. Ark-Ell Springs, Inc.*, 569 F.2d 286, 289 (5th Cir. 1978); *Parker v. Petrovics*, No. 2:19-CV-00699-RDP, 2020 WL 3972761, at *6 (N.D. Ala. July 14, 2020) (stating the same and quoting  *Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1311 (11th Cir. 2020)).  Thus, "at the dismissal stage in federal court, the plaintiff need only allege sufficient facts to plausibly show a trade secret was involved and to give the defendant notice of the material it claims constituted a trade secret.'"  *Decurtis LLC v. Carnival Corp.*, No. 20-22945-CIV, 2021 WL 1968327, at *5 (S.D. Fla. Jan. 6, 2021), *report and recommendation adopted as modified in order to dismiss with prejudice,* No. 20-21547-CIV, 2021 WL 1540518 (S.D. Fla. Apr. 20, 2021) (quoting *DynCorp Int'l v. AAR Airlift Grp., Inc.*, 664 F. App'x 844, 848 (11th Cir. 2016)).  "Those types of allegations can come in many different forms, but they are often specific to clients, competitors, documents, or agreements."  *Id.* at *7.

Defendants argue that Plaintiffs do not sufficiently identify the trade secrets in order to plausibly state a claim.  DE 24 at 15-16 (citing, as an example, *Gordon Food Serv., Inc. v. Price Armstrong, LLC*, 2021 WL 7448881, at *5-6 (M.D. Fla. July 8, 2021) (stating that plaintiff is not required to identify the trade secrets with particularity but must meet plausibility and notice standards).  Plaintiffs respond that the allegations are sufficient because the trade secrets and formulas at issue are those used to manufacture Plaintiffs' bats, which were known, identified and transferred by David Chandler pursuant to various documents.  DE 38 at 14-15.

### 1.  The Trade Secrets are Sufficiently Identified

Here, Plaintiffs' allegations identifying the trade secrets are sufficient to survive a motion to dismiss.  First Plaintiffs allegations in the Complaint sufficiently describe that the trade secrets involved are those used to manufacture Plaintiffs' proprietary bats.  Plaintiffs allege that RxSport

previously owned trade secrets and formulas that it transferred to La Potencia, who licensed rights in them to YC52.  DE 1 at ¶¶106-08.  Plaintiffs further allege that these trade secrets are used, *inter alia*, in the manufacturing of the wood baseball bats at issue.  *Id.*  Plaintiffs maintain, in fact, that the trade secrets are necessary to the manufacture of the bats and thus have independent economic value by being generally unknown and not readily ascertainable by others.  *Id.* at ¶108.  Plaintiffs also contend that RxSport and Plaintiffs have taken reasonable measures to keep the trade secrets and formulas used to make the bats confidential.  *Id.*  Thus, I find that Plaintiffs sufficiently identify the nature of the trade secrets involved and otherwise satisfy the pleading requirements for the first element of a misappropriation of trade secrets claim.

Second, Plaintiffs go even further and attach the specific documents referencing the trade secrets at issue.  In the Loan Agreement, Chandler acknowledged that he "acquired and added to the confidential information [of RxSport] … including … trade secrets."  DE 1-9 at 12.  Defendant Chandler also executed a Retention Agreement as President of RxSport consenting to La Potencia's retention of these trade secrets and formulas as part of the collateral securing the loan La Potencia made to RxSport.  DE 1-11 at 3-4.  After YC52 acquired rights to use the trade secrets, it hired Chandler, in part, to locate and access the trade secrets and formulas.  DE 1 at 9, ¶34.  Thus, Plaintiffs specifically identify the trade secrets as those involved in the above-described transactions, which culminated in Chandler being hired to marshal them.

Third, despite Defendants' argument that the alleged trade secrets do not constitute proprietary information, [7] the Complaint's attachments indicate that Defendant Chandler

---

[7] Defendants argue that the "Loan Agreement defines 'confidential information' in a way that excludes information known to the public, known to the defendants before having learned it from RxSport, disclosed to defendants by third parties who are not subject to any confidentiality obligations, or developed independently from RxSport."  DE 24 at 16 (citing DE 1-9 at § 4.10(a)).  Therefore, Defendants posit that without more they cannot know whether the alleged secrets meet the definition in the Loan Agreement.  Thus, Defendants imply that the process is generally not secret.

recognizes that the way a bat is made has value as a proprietary method or process.  Plaintiffs include a copy of a page from Pecos' website, which states that "David [Chandler] is well known as the world's number one hand crafter of Maple Bats [and] … is world renowned not just for his work with bats but the physics on contact and exit velocity."  DE 1-14 at 2.  Plaintiffs also include a page from the website of BestBatDeals.com, which sells Defendant Chandlers' competing bats, and the website refers to at least two models of bats as "proprietary."  DE 1-15 at 6-7.  Such acknowledgment of the exclusiveness over how bats are made bolsters Plaintiffs' allegations that they acquired information from RxSport, which is not generally known, pertaining to the manufacture of their bats.  Furthermore, as previously stated, whether the information is a trade secret is a question of fact normally reserved for a fact finder.  *Trinity Graphic, USA, Inc.*, 320 F. Supp. 3d at 1293.  Therefore, notwithstanding Defendants' arguments to the contrary, I find that Plaintiffs sufficiently identify the trade secrets at issue to survive a motion to dismiss.

### 2.  Misappropriation is Sufficiently Alleged

Defendants do not expressly argue that Plaintiffs' allegations as to misappropriation are insufficient, and I do not otherwise find Plaintiffs' allegations lacking.  Plaintiffs allege that Chandler and Group Authentic misappropriated the trade secrets and disclosed them in order to have competing bats manufactured for sale.  *Id.* at ¶109.  Thus, Plaintiffs sufficiently state that Chandler knowingly disclosed the trade secrets, which he helped create, and knowingly turned them over to Maxbat in order to make his competing bats.  Accordingly, I conclude that Plaintiffs have satisfied the pleading requirement for the last two elements of a misappropriation claim— disclosing information that one was duty-bound to keep confidential.  *See RxStrategies, Inc. v. CVS Pharmacy, Inc.*, 390 F. Supp. 3d 1341, 1353 (M.D. Fla. 2019) (finding allegations sufficient

where Plaintiff alleged facts "to indicate that [d]efendants disclosed or used [plaintiffs]' [trade secrets]").

For the above-stated reasons, I find that Plaintiffs sufficiently identify the trade secrets to satisfy plausibility and notice standards.  Given that Plaintiffs have also sufficiently alleged misappropriation of their trade secrets, I find that Defendants' motion to dismiss Count VIII should be denied.

### III.     Defendants' Motion to Transfer Venue under 28 U.S.C. § 1404(a)[8]

Lastly, Chandler and Group Authentic argue that even if this Court finds it has personal jurisdiction over them, it should transfer this case to the United States District Court for the Eastern District of Pennsylvania under 28 U.S.C. § 1404(a).  Section 1404(a) provides that "for the convenience of the parties and witnesses, [and] in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  Counts considering transfer under § 1404(a) engage in a two-pronged inquiry.  As a threshold matter, courts consider whether a plaintiff could have originally brought the action in the proposed alternative venue.  *Hand Media, Inc. v. J.M. Smucker Co.*, No. 1:16-CV-20315-UU, 2016 WL 8740008, at *3 (S.D. Fla. Apr. 20, 2016) (citing *Mason v. Smithkline Beecham Clinical Lab'ys*, 146 F. Supp. 2d 1355, 1359 (S.D. Fla. 2001)); *see also   Glob. Appraisal Sols., LLC v. Ashley*, No. 20-CV-60889-RAR, 2021 WL 1341522, at *3 (S.D. Fla. Apr. 9, 2021) ("Before considering whether a transfer is appropriate, the Court's threshold inquiry is whether this action could have been brought in the [alternative district].").  If so, then courts proceed to determine if convenience and the interests of justice

---

[8] In their Motion, Defendants stated that they also seek transfer pursuant to 28 U.S.C. § 1406(a); however, they made no arguments in their pleadings pertaining to this statute and only argued for transfer under § 1404(a) at the motion hearing.  DE 52.  Therefore, I address only transfer pursuant to 28 U.S.C. § 1404(a).

support transfer based upon an element-by-element balancing of private and public factors. *Mason*, 146 F. Supp. 2d at 1359.  Movant has the burden to establish that transfer is appropriate. *Alcaras v. Hatteras Yachts, Inc.*, No. 14-22115-CIV, 2014 WL 5461993, at *2 (S.D. Fla. Oct. 27, 2014) ("To satisfy section 1404(a), a movant must show: (1) that the action could have been brought by the plaintiff in the venue to which transfer is sought; and (2) that convenience and the interests of justice support transfer to the requested forum.").

Here, I recommend that transfer is not appropriate because Defendants have not carried their burden to show that the first prong is satisfied, namely, that Plaintiffs could have brought this action initially in the Eastern District of Pennsylvania.  The first prong is satisfied only if venue, personal jurisdiction and subject matter jurisdiction were proper in the proposed transferee district as to each Defendant at the time of suit.  *Anstalt v. Bacardi & Co., Ltd.*, No. 1:17-CV-21505-UU, 2017 WL 5634954, at *5 (S.D. Fla. June 26, 2017) ("As an initial matter, courts almost unanimously hold that a party seeking to transfer a case under 28 U.S.C. § 1404(a) must demonstrate that the transferee court has subject matter jurisdiction, that venue is proper and that there is personal jurisdiction in the transferee forum over each defendant in a given action.") (citing *Hoffman v. Blaski*, 363 U.S. 335 (1960)); *see also Hight v. United States Dep't of Homeland Sec.*, 391 F. Supp. 3d 1178, 1183-84 (S.D. Fla. 2019) (same).

Defendants fail to show that the Eastern District of Pennsylvania had personal jurisdiction over each Defendant in this action when this action was filed.  In particular, Defendants fail to demonstrate that personal jurisdiction is proper in Pennsylvania over Defendants MaxBat, Pecos and BestBatDeals.com, which are not domiciled in Pennsylvania.  MaxBat is a Minnesota corporation with its principal place of business there. DE 23-1 at ¶¶3-5. Pecos is a Texas limited liability company with its principal place of business in Texas.  DE 1 at ¶6.  BestBatDeals.com is

an online store affiliated with Pecos in Texas that lists a mailing address on its website in Texas. *Id.* at ¶7.

Defendants' arguments that personal jurisdiction exists in Pennsylvania are unavailing. First, Defendants argue that "movants *would be* amenable to service of process" in the Eastern District of Pennsylvania and, in support, offer a consent to jurisdiction in the Eastern District of Pennsylvania signed by counsel for each of the Defendants.   DE 24 at 17 (emphasis added); DE 41-1.   The determination of where a case "could have been brought," however, is assessed as of the time of the filing of the suit. *RWIP, LLC v. Grand Image, Ltd.*, No. 1:11-CV-01855-MHS, 2012 WL 13008640, at *3 (N.D. Ga. May 21, 2012) ("[I]n deciding a motion to transfer venue, the Court focuses on the claims made at the time of filing[.]") (citing, *inter alia*, *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960)).   Therefore, Defendants cannot consent to be sued after a suit is filed for purposes of a transfer under § 1404(a).   *Hoffman*, 363 U.S. at 344 ("If when a suit is commenced, plaintiff has a right to sue in that district, independently of the wishes of defendant, it is a district where the action might have been brought.").

Second, in their Reply, Defendants argue that personal jurisdiction is proper in Pennsylvania under Pennsylvania's long arm statute and that due process is satisfied.   DE 41 at 15.   The argument is problematic for a couple reasons.   First, Defendants make this argument in their Reply and did not make it in their motion.   "[T]he Court will not consider arguments that exceed the permissible scope of the Reply." *See DeRossett v. Se. Toyota Distributors, Inc.*, No. 0:17-CV-60415-WPD, 2017 WL 7311876, at *1 (S.D. Fla. Aug. 4, 2017) (citing S.D. Fla. L. R. 7.1(c) and collecting cases).   Thus, as Defendants' argument is not fully briefed, it fails on this basis alone.   Second, on its face, Defendants' argument is conclusory and fails to show that due process is satisfied with respect to MaxBat.   Defendants contend that the Maxbat, Pecos, and

BestBatDeals.com each have websites that promote the allegedly infringing products in Pennsylvania and elsewhere such that it would come as no surprise that they could be haled into that forum to defend a suit. DE 41 at 15. However, Defendants do not cite to the record for proof that MaxBat has a website promoting the allegedly infringing bats, and such an assertion conflicts with David Chandler's Declaration that the bats at issue "may be obtained from [only] two sources – bestbatdeals.com and authenticbats.com[.]" DE 24-1 at 15, ¶53. Neither of the listed websites belong to MaxBat. In addition, MaxBat argues in its motion to dismiss that it "did not sell any of the bats at issue in the complaint to anyone but Group Authentic/David Chandler[.]" DE 23 at 5. It is doubtful that MaxBat would make the bats at issue available online and then only have sold them to Defendants. Thus, Defendants' lack of evidentiary support for the fact that MaxBat makes the infringing bats available on their website is fatal to their contention that personal jurisdiction in Pennsylvania is satisfied with respect to MaxBat.

In sum, for the reasons discussed above, Defendants fail to establish that Pennsylvania could properly exercise personal jurisdiction over the nonresident Defendants. Therefore, Defendants fail to satisfy the first prong—a threshold inquiry—that the Eastern District of Pennsylvania is a proper forum because Plaintiffs could have brought this action there. Accordingly, I recommend that transfer to the Eastern District of Pennsylvania is not proper and do not proceed to the second prong of the inquiry.

## **CONCLUSION**

Accordingly, it is recommended that Defendant Chandler and Group Authentic's Motion (DE 24) be **DENIED**.

<u>**NOTICE OF RIGHT TO OBJECT**</u>

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with U.S. District Judge Rodolfo A. Ruiz, II.  Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**Conversely, if a party does not intend to object to this Report and Recommendation, then that party shall file a Notice of such within five (5) days of the date of this Report and Recommendation.**

**DONE AND SUBMITTED** in Chambers at Fort Pierce, Florida, this 3rd day of November, 2022.

_____
SHANIEK MILLS MAYNARD
U.S. MAGISTRATE JUDGE