UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-80417-CIV-RUIZ/MAYNARD

**LA POTENCIA, LLC** and
**YC52, LLC** d/b/a **CHANDLER BATS**,

    Plaintiffs,

v.

**DAVID CHANDLER,** *et al.*,

    Defendants.

_____/

### REPORT AND RECOMMENDATION
### ON DEFENDANT MAXBAT INCORPORATED'S ("MAXBAT'S") MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION ("MOTION") (DE 23)

**THIS CAUSE** comes before me upon an Order of Reference, DE 48, and the above Motion. I have considered the Motion, Response, DE 39, and Reply, DE 42. Also, on October 4, 2022, I heard oral argument on the Motion. DE 52. Being otherwise duly advised, I respectfully **RECOMMEND** that Defendant's Motion be **GRANTED**.

### BACKGROUND

Plaintiff La Potencia, LLC ("La Potencia") is the owner of intellectual property rights, among other assets, previously owned by Defendant David Chandler's former company, RxSport, Corp. ("RxSport"), which RxSport surrendered to La Potencia after defaulting on a loan. RxSport was in the business of manufacturing and selling high performance wood baseball bats and ancillary products to Major League Baseball Players and other athletes.

In April 2017, Chandler, as the President and operator of RxSport, entered into a Loan Agreement and related Security Agreement with La Potencia. DE 1 at ¶¶25-26. Under the Loan

Agreement, La Potencia provided capital to RxSport to operate RxSport's business of manufacturing, marketing, and selling baseball bats and related products. *Id*. at ¶26. The Loan Agreement provided La Potencia with a security interest in all of RxSport's assets, including its trademarks, as collateral for the loan. *Id*.; DE 1-9. The Loan Agreement also contained a non-compete provision providing that Chandler would not compete with RxSport and La Potencia in any manner or solicit for employment any employee or consultant of RxSport. DE 1 at ¶27 (citing § 4.10(b) of the Loan Agreement). The Loan Agreement also contained a non-disclosure provision prohibiting Chandler from disclosing any of RxSport's confidential information to third parties. *Id*.

On January 10, 2019, RxSport filed Chapter 11 bankruptcy in the Eastern District of Pennsylvania, thereby defaulting on the Loan and Security Agreements. *Id.* at ¶30. On July 18, 2019, legal counsel for La Potencia sent a letter to RxSport regarding its intention to retain collateral as a result of RxSport's default (the July 18, 2019 Letter). DE 1-11. The letter informs RxSport that La Potencia proposes to retain all collateral in which a security interest was granted in satisfaction of the obligations owed by RxSport. The letter states that "[a]s of the date hereof, the aggregate unpaid balance of the Obligations, including principal, interest and all other charges is $1,084,029.49." DE 1-11 at 3. RxSport, through Chandler, responded by signing and returning an Acknowledgment and Consent Form. *Id*. at 4. The Acknowledgment and Consent Form agrees that RxSport defaulted on the Security Agreement and consents to La Potencia's retention "of the entirety of the Collateral in satisfaction of the Obligations" upon the term's stated in the July 18, 2019 Letter. DE 1 at ¶¶31-32; DE 1-11. The collateral included the rights and ownership interests in U.S. Trademark Registration No. 4,503,473 for the mark CHANDLER BATS and U.S.

Trademark Registration No. 4,542,834 for the mark C CHANDLER and Design (collectively the "Marks" or the "CHANDLER BATS Marks").

La Potencia licensed the Marks exclusively to Plaintiff YC52, LLC ("YC52"). DE 1-8. YC52 manufactures and sells baseball bats throughout the United States and the world to Major League Baseball ("MLB") players, Minor League Baseball players, and other athletes. DE 1 at ¶17. After acquiring the license to the Marks, YC52 hired Chandler to work in a similar capacity as he had for RxSport. DE 1 at ¶34. As part of his responsibilities, Chandler was to assist YC52 with accessing and using RxSport's prior assets, including "trade secrets and formulas." *Id.* Chandler worked for YC52 from July 2019 through October 2019. *Id.*

Plaintiffs allege that, while employed at YC52, Chandler worked on forming a new business to compete with Plaintiffs in violation of the Loan Agreement's non-compete provision. DE 1 at ¶35. Plaintiffs further allege that Chandler solicited employees of La Potencia and YC52 to work for his new business and solicited investors and wholesalers to market, sell, and distribute his competing baseball bats. *Id.* at ¶36. Further, Chandler communicated to active and retired MLB players his intent to form a new company. *Id.* at ¶37.

Plaintiffs allege that Chandler – through his new company, Group Authentic—now contracts with Defendant MaxBat, Inc. ("MaxBat") to manufacture allegedly infringing baseball bats. *Id.* at ¶¶44, 47. Plaintiffs contend that Chandler and Group Authentic disclosed trade secrets acquired from RxSport to Defendant MaxBat as well as to third parties. *Id.* at ¶¶38, 51. Furthermore, Plaintiffs allege that Defendant Pecos League of Professional Baseball Clubs, LLC ("Pecos"), an independent baseball league, sells the infringing baseball bats through a link on its website that directs traffic to the online shop of Defendant BestBatDeals.com. DE 1 at ¶¶53, 55.

Plaintiffs bring suit against all Defendants (Chandler, Group Authentic, Maxbat, Pecos, and BestBatDeal.com) for trademark infringement under 15 U.S.C. § 1114 (Count I), trademark infringement under 15 U.S.C. § 1125(a) (Count II), false association under 15 U.S.C. § 1125(a) (Count III), false designation of origin under 15 U.S.C. § 1125(a) (Count IV), and unfair competition under Florida common law (Count V). Plaintiffs also sue David Chandler for breach of contract (Count VI) and Conversion (Count VII), and sues Chandler, Group Authentic and MaxBat for Misappropriation of Trade Secrets under 18 U.S.C. § 1836, *et. seq.* (Count VIII). Defendant MaxBat now moves to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).

## STANDARD OF REVIEW

When considering a motion to dismiss for lack of personal jurisdiction, a court must accept the facts alleged in the Complaint as true, unless they are contradicted by defendant's affidavits. *See Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988); *Corneal v. CF Hosting, Inc.*, 187 F. Supp.2d 1372, 1373 (S.D. Fla. 2001); *Venetian Salami Co. v. Parthenais*, 554 So.2d 499, 502 (Fla. 1989). If the Complaint pleads facts sufficient to form a basis for personal jurisdiction, the burden shifts to the nonresident defendant to challenge the plaintiff's allegations by affidavits or other pleadings. *See Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000); *Venetian Salami Co.*, 554 So.2d at 502. If the defendant meets this burden, the plaintiff must then substantiate the jurisdictional allegations made in the complaint by affidavits or other competent proof. *Id*. "The court must construe all reasonable inferences in favor of the plaintiff." *Meier ex. Rel. Meier v. Sun Intern. Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002).

## DISCUSSION

Regarding personal jurisdiction over MaxBat, the Complaint alleges as follows:

> 13. This Court has personal jurisdiction over MaxBat because it operates, conducts, engages in, and carries on business in Florida, committed a tortious act within Florida, including within this judicial district, and caused injury to persons within Florida. Among other things, MaxBat is manufacturing, offering for sale, selling, and/or distributing infringing goods at issue in this case within Florida, including within this District, and is causing injury to Plaintiffs in Florida. Thus, this Court's exercise of personal jurisdiction over MaxBat is consistent with the Constitution of the United States and Fla. Stat. § 48.193.

DE 1 at ¶13.

In its motion to dismiss, MaxBat contends that no basis exists for this Court to exercise personal jurisdiction over it. In support, MaxBat submits the affidavit of Mr. Paul A. Johnson, Sr., Chief Executive Officer ("CEO") of MaxBat. DE 23-1. In his affidavit, Mr. Johnson states that MaxBat incorporated under the laws of Minnesota in 2004 and maintains its principal place of business in Minnesota. *Id.* at ¶¶4-5. Mr. Johnson also declares that MaxBat does not operate any offices in Florida and does not own any form of property in Florida. *Id.* at ¶¶6-7. Additionally, MaxBat has no employees working in a Florida location, and it has not insured a person, property, or risk located in Florida. *Id*. at ¶¶8-9. Mr. Johnson further declares that an average of 6.1% of MaxBat's overall sales, as measured by annual revenue, were shipped to Florida from April 1, 2019 through March 31, 2022. *Id.* at ¶16.

As to the allegedly infringing baseball bats, Mr. Johnson testifies that MaxBat occasionally had traveling salespeople attend spring training for certain MLB teams in Florida but discontinued the practice during the COVID pandemic and, at no time, did the practice extend to Group Authentic's baseball bats. *Id.* at ¶12. Mr. Johnson also attests that Group Authentic purchased a small number of baseball bats from MaxBat, which MaxBat shipped to Florida from its facility in Minnesota at Group Authentic's direction. *Id.* at ¶13. Further, MaxBat is not a party to any contract relating to or concerning the manufacture or sale of Group Authentic baseball bats in

Florida. *Id.* at ¶15. Indeed, at the motion hearing, MaxBat clarified that it did not sell any of the allegedly infringing baseball bats in Florida; they only shipped baseball bats to Florida upon the instruction of Group Authentic. DE 52 at 42:21-43:9.

In their opposition memorandum, Plaintiffs assert that personal jurisdiction is proper under Florida's Long Arm Statute, Fla. Stat. § 48.193(1)(a)(2), and the United States Constitution because MaxBat is manufacturing infringing baseball bats for Group Authentic. DE 39 at 2-11. Specifically, Plaintiffs contend that MaxBat's admission that it manufactured and sold infringing baseball bats, which were shipped to Florida, is sufficient for purposes of personal jurisdiction. *Id.* Additionally, Plaintiffs argue that MaxBat is making infringing baseball bats that MLB players are using in Florida during spring training. *Id.* Thus, both Plaintiffs are being harmed in Florida because they are based here. *Id.*

Because "[f]ederal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons[,]" *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014), a federal court in Florida may properly exercise personal jurisdiction only if the requirements of Florida's long arm statute and the Due Process Clause of the Fourteenth Amendment to the United States Constitution are both met. *Posner*, 178 F.3d at 1214. A federal court in Florida considering personal jurisdiction evaluates two questions: (1) whether personal jurisdiction exists under Florida's long arm statute, and (2) whether exercising that jurisdiction would violate the Due Process Clause of the Fourteenth Amendment. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339 , 1350 (11th Cir. 2013); *see also D.W. Mercer, Inc. v. Valley Fresh Produce, Inc.*, 146 F. Supp. 2d 1274, 1276 (M.D. Fla. 2001) (*citing Robinson v. Giarmarco & Bill, P.C.,* 74 F.3d 253, 256 (11th Cir. 1996)) (Court first will consider Florida's long arm statute and then will consider "whether sufficient

minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment so that maintenance of the suit does not offend traditional notions of fair play and substantial justice.").

### A. The Florida Long-Arm Statute, Fla. Stat. §48.193

Although the Complaint alleges that MaxBat, "operates, conducts, engages in, and carries on business in Florida" in their opposition memorandum Plaintiffs confine their argument on Florida's long-arm statute to the contention that Defendants have committed a tortious act in this state. My analysis is therefore limited to this argument.

Fla. Stat. § 48.193(1)(a)(2) allows for personal jurisdiction in Florida over nonresident defendants who "commit a tortious act within" Florida. Fla. Stat. § 48.193(1)(a)(2) (2014). This provision "permits jurisdiction over the nonresident defendant who commits a tort outside of the state that causes injury inside the state." *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (2008) (citing *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1216 (11th Cir. 1999)). "It is well-settled in the Eleventh Circuit that trademark claims under the Lanham Act allege tortious acts for long-arm purposes, *Louis Vuitton*, 736 F.3d at 1353, and that out-of-state infringement causing injury in Florida satisfies the statute, *Licciardello*, 544 F.3d at 1283." *PG Creative Inc. v. Affirm Agency, LLC*, 2019 WL 5684219, at *4 (S.D. Fla. Oct. 31, 2019) (*citing Honus Wagner Co. v. Luminary Group LLC*, 2017 WL 6547899, at *8 (S.D. Fla. Dec. 21, 2017) (collecting cases finding long arm jurisdiction for tortious out-of-state conduct that caused in-state harm)). Although the Eleventh Circuit has not conclusively determined that trademark injury necessarily occurs where the owner of the mark resides, *see Licciardello*, 544 F.3d at 1283, district courts in Florida have consistently held that "[i]njury from trademark infringement occurs in the state where the trademark owner resides." *See, e.g.*, *Nida Corp. v. Nida*, 118 F. Supp.2d 1223, 1228 (M.D. Fla. 2000); *see also USA Mgmt. Grp., LLC v. Fitness Publications, Inc.*, 2015 WL 11233075, at *2 (S.D. Fla. Mar. 4, 2015);

*R&R Games, Inc. v. Fundex Games, Ltd.*, 2013 WL 784397, *2 (M.D. Fla. March 1, 2013); *JB Oxford Holdings, Inc. v. Net Trade, Inc.*, 76 F. Supp.2d 1363, 1366-68 (S.D. Fla. 1999).

Maxbat ignores this line of cases and instead focuses its argument on the fact that it does not operate or conduct any business in Florida and did not sell any of the bats at issue to anyone but Group Authentic/David Chandler, not to any Florida customers. Yet, case law makes clear that specific jurisdiction under Fla. Stat. § 48.193(1)(a)(2) does not require nonresident defendants to operate in Florida or conduct business here. Here, it is undisputed that the principal places of business for both Plaintiffs are in Florida and Plaintiff YC52 is a Florida limited liability company. Thus, Plaintiffs reside in Florida and any trademark injury that has occurred has been suffered in Florida. Accordingly, Florida's long arm statute requirements are met.

### B. Due Process

But even if Florida's long arm statute encompasses MaxBat's alleged infringement, finding that personal jurisdiction exists over MaxBat in Florida fails to comport with due process. "[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (*quoting Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

In determining whether the requirements of due process are met, courts employ a three-part due process test. *Louis Vuitton*, 736 F.3d at 1355. The first prong addresses "whether the plaintiff's claims arise out of or relate to at least one of the defendant's contacts with the forum." *Id.* (internal quotation marks and citations omitted). The second prong addresses "whether the nonresident defendant purposefully availed himself of the privilege of conducting activities within

the forum state, thus invoking the benefit of the forum state's laws." *Id.* The third prong addresses "whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice." *Id.* Plaintiff carries the burden to establish the first two prongs. *Id.* "[I]f plaintiff does so, a defendant must make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.* (internal quotation marks and citation omitted).

### 1. "Arising out of or Relatedness"

To satisfy the first prong, Plaintiffs' claims must "arise out of or relate to at least one of the defendant's contacts with the forum." *Louis Vuitton*, 736 F.3d 1355. This inquiry "focus[es] on the direct causal relationship between the defendant, the forum, and the litigation." *Id*. at 1355-56. Importantly, not just any contacts will do: "For a State to exercise jurisdiction consistent with due process, the defendant's *suit related* conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (emphasis added). The "mere fact that [defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." *Id*. at 291. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at 290. Moreover, the relationship between the forum and the defendant "must arise out of contacts that the 'defendant *himself*' creates with the forum…." *Id*. at 284 (emphasis added) (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Contacts between the plaintiffs or other third parties and the forum are not sufficient. *Id*.

Plaintiffs are not required to establish that their claim came about *because of* Defendants' in-state conduct, however. The Eleventh Circuit previously held that "a tort 'arises out of or relates to' the defendant's activity in a state only if the activity is a 'but-for' cause of the tort." *Waite v.*

*All Acquisition Corp.*, 901 F.3d 1307, 1314 (11th Cir. 2018).  The Supreme Court rejected this but-for causation requirement in *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021) (hereinafter, *Ford*).  *See Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1238  (S.D. Fla. 2021) (holding that *Ford* overruled the Eleventh Circuit's ruling in *Waite*).  The Supreme Court explained that, while the first part of the "arise out of or relate to" requirement necessitates causation, the second part – the "relate to" portion – contemplates that jurisdiction is possible without a causal showing.  *Ford*, 141 S. Ct. at 1026.  A close relationship between the defendant's contacts with the forum and the plaintiff's claims can also suffice.  *Id*. at 1032.

Here, I find Plaintiffs fail to establish a close relationship between MaxBat's contacts with Florida and Plaintiffs' claims.  Plaintiffs allege that that "MaxBat is manufacturing, offering for sale, selling and/or distributing" in Florida baseball bats that infringe Plaintiffs' trademarks.  As previously discussed, MaxBat provides its CEO's declaration contravening Plaintiffs' assertion that MaxBat is manufacturing, marketing or selling the allegedly infringing bats in Florida.  Indeed, MaxBat avers that it has only sold the bats at issue to Group Authentic.  Group Authentic is located in Pennsylvania.  DE 1 at ¶¶3-4.  As to distributing, MaxBat acknowledges that it sold a small number of bats to Group Authentic, which it shipped to Florida at the direction of Group Authentic, but shipping some bats to Florida at the direction of a customer does not establish a close relationship between MaxBat, Florida and Plaintiffs' claims.  The other contact between MaxBat and Florida established by the record is the fact that an average of 6.1% of MaxBat's overall sales, as measured by annual revenue, from April 1, 2019 through March 31, 2022, are from products shipped to Florida.  DE 23-1 at ¶16.  However, Plaintiff has failed to show any connection between MaxBat's overall revenue from Florida and the specific claims raised in this litigation.  Because Plaintiffs lack evidentiary support for their assertions that MaxBat otherwise

has Florida contacts with a close relationship to Plaintiffs' claims, I find the relatedness element has not been met.

### 2. Purposeful Availment

In intentional tort cases such as trademark infringement, there are two applicable tests to determine whether a defendant has "purposefully availed" himself to the forum state: the traditional "minimum contacts" test, *see Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 779-80 (1984), and the "effects test," *see Calder v. Jones*, 465 U.S. 783, 789 (1984). *See Louis Vuitton*, 736 F.3d at 1356-57.

Under the traditional minimum contacts test, a court considers whether the defendant's contacts with the forum state "(1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum." *Louis Vuitton*, 736 F.3d at 1357. To conduct this analysis, the court "identif[ies] all contacts between the nonresident defendant and a forum state and ask[s] whether, individually or collectively, those contacts satisfy these criteria." *Id*.

Plaintiffs fail to show purposeful availment under the minimum contacts test. MaxBat did not avail itself of the Florida forum in such a way that it could reasonably anticipate being haled into a Florida court for claims involving Group Authentic's allegedly infringing baseball bats. Indeed, the only contact with Florida involving the baseball bats at issue is Group Authentic's directive to MaxBat to send a limited number of bats Group Authentic purchased to Florida. Such contacts are too attenuated to establish personal jurisdiction. *Burger King*, 471 U.S. at 462 ("'[P]urposeful availment' requirement ensures that a defendant will not be haled into a

jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated contacts[.]'"). As a result, purposeful availment for due process purposes is not shown here.

Under the effects test, a nonresident defendant's single tortious act can establish purposeful availment even if a defendant does not have any additional contacts with the forum state. *See Licciardello*, 544 F.3d at 1285 (*citing Calder*, 465 U.S. 783). The effects test is met when the tort was "(1) intentional; (2) aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." *Id.* (citations omitted).

The effects test is also not met here. In *Walden*, 571 U.S. 277, the United States Supreme Court clarified the *Calder* effects test by stating that the "plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.* at 285-86 (*citing Burger King*, 471 U.S. at 478). Thus, the effects test is not met solely because plaintiffs suffered harm in the forum state. The test requires that defendant's conduct be itself specifically "aimed at the forum state." Here, that requirement is not satisfied. As discussed above, Plaintiffs fail to show that MaxBat did more than ship to Florida at Group Authentic's directive a small number of the bats at issue. That Plaintiffs allegedly suffered harm in Florida is insufficient, without more, to show that MaxBat intentionally aimed its conduct at Florida such that MaxBat should have anticipated suit here. Thus, Plaintiffs fail to carry their burden to satisfy purposeful availment.

### 3. Fair Play and Substantial Justice

"In evaluating 'fair play and substantial justice,' courts consider (1) the burden on the defendant, (2) the forum State's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several state in

furthering fundamental substantive social polic[y]. *R & R Games, Inc. v. Fundex Games, Ltd.*, No. 8:12-CV-01957-JDW, 2013 WL 3729309, at *7 (M.D. Fla. July 12, 2013) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477-78 (1985)). MaxBat contends only that Plaintiff has not pled any facts to suggest Florida has any interest in adjudicating this dispute. DE 23 at 8. Plaintiffs respond that MaxBat fails to meet its burden as to this prong. DE 39 at 10. Even if this third prong is satisfied, however, Plaintiffs fail to meet their burden to satisfy the first two prongs under the due process analysis. Therefore, determining whether any burden on MaxBat is outweighed by other considerations is unnecessary.

In sum, even if Florida's long arm statute is satisfied, Plaintiffs fail to show that exercising personal jurisdiction over MaxBat would comport with due process. Therefore, I conclude that Plaintiffs fail to demonstrate that personal jurisdiction exists over MaxBat in Florida.

## CONCLUSION

Accordingly, it is recommended that Defendant MaxBat's Motion (DE 23) be **GRANTED**.

## NOTICE OF RIGHT TO OBJECT

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with U.S. District Judge Rodolfo A. Ruiz, II. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016). **Conversely, if a party does not intend to object to this Report and Recommendation, then**

**that party shall file a Notice of such within five (5) days of the date of this Report and Recommendation.**

      **DONE AND SUBMITTED** in Chambers at Fort Pierce, Florida, this 4th day of November, 2022.

_____
SHANIEK MILLS MAYNARD
U.S. MAGISTRATE JUDGE