UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CV-80417-RAR

**LA POTENCIA, LLC** and
**YC52, LLC** d/b/a **CHANDLER BATS**,

    Plaintiffs,

v.

**DAVID CHANDLER**, *et al.*,

    Defendants.
_____/

### ORDER ADOPTING IN PART AND REJECTING IN PART REPORT AND RECOMMENDATION AND DENYING MAXBAT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

This Order addresses a narrow jurisdictional question: how many shipments must an out-of-state company send into Florida for the exercise of personal jurisdiction over the company to comport with due process? On the facts presented, the Court concludes that Defendant MaxBat Incorporated's ("Maxbat") shipment of thirty high performance baseball bats into Florida over the course of nineteen shipments is sufficient, such that the exercise of personal jurisdiction over MaxBat comports with due process.

This cause comes before the Court upon United States Magistrate Judge Maynard's Report and Recommendation ("Report"), [ECF No. 54], filed on November 4, 2022. The Report recommends that the Court grant Defendant MaxBat's Motion to Dismiss for Lack of Personal Jurisdiction ("Motion"), [ECF No. 23]. *See* Report at 1. The Report concludes that Florida's long-arm statute, Fla. Stat. § 48.193, reaches Defendant MaxBat because Plaintiffs are located in Florida and allege that they suffered a trademark injury there. *Id.* at 7–8. However, the Report recommends this Court grant MaxBat's Motion because exercising personal jurisdiction over MaxBat in Florida fails to comport with due process. *Id.* at 8.

The Report properly notified Plaintiffs of their right to object to Magistrate Judge Maynard's findings. *Id.* at 13. Plaintiffs La Potencia, LLC and YC52, LLC d/b/a Chandler Bats (together, "Plaintiffs") objected to the Report ("Objections"), [ECF No. 60], on November 17, 2022. Defendant MaxBat filed a Response to Plaintiffs' Objections ("Response"), [ECF No. 61], on December 1, 2022. The parties do not object to the Report's conclusion that Florida's long-arm statute reaches MaxBat, but Plaintiffs object to the Report's due process analysis. The Court having carefully reviewed the Report, the Objections, the Response, and record, and being otherwise fully advised, it is hereby

**ORDERED AND ADJUDGED** that (1) the Report, [ECF No. 54], is **ADOPTED IN PART AND REJECTED IN PART** as explained herein; and (2) Defendant MaxBat's Motion to Dismiss is **DENIED** as set forth herein.

## BACKGROUND

This case involves high performance wood baseball bats used primarily by Major League Baseball ("MLB") players. The intellectual property rights to these particular baseball bats initially belonged to Defendant David Chandler's former company, RxSport. RxSport surrendered the intellectual property rights to Plaintiff La Potencia after defaulting on a loan it owed to La Potencia. The loan agreement contained a non-compete provision providing that Chandler would not compete with RxSport and La Potencia in any manner or solicit for employment any employee or consultant of RxSport. Compl. ¶ 27, [ECF No. 1], (citing § 4.10(b) of the Loan Agreement). The loan agreement also contained a non-disclosure provision prohibiting Chandler from disclosing any of RxSport's confidential information to third parties. *Id*.

After La Potencia obtained the intellectual property rights, La Potencia licensed the rights to Plaintiff YC52. YC52 manufactures and sells baseball bats throughout the United States and the world to MLB players, Minor League Baseball players, and other athletes. *Id.* ¶ 17. After

acquiring the intellectual property rights, YC52 hired Defendant Chandler to work in a similar capacity as he had for RxSport. *Id.* ¶ 34.  In that role, Chandler assisted YC52 with accessing and using RxSport's prior assets, including "trade secrets and formulas." *Id.*  Chandler worked for YC52 from July 2019 through October 2019. *Id.*

Plaintiffs allege that while employed at YC52, Chandler worked on forming a new business to compete with Plaintiffs in violation of the loan agreement's non-compete provision. *Id.* ¶ 35. Plaintiffs further allege that Chandler solicited employees of La Potencia and YC52 to work for his new business and solicited investors and wholesalers to market, sell, and distribute his competing baseball bats. *Id.* ¶ 36.  Plaintiffs allege that Chandler—through his new company, Defendant Group Authentic—now contracts with Defendant MaxBat to manufacture allegedly infringing baseball bats. *Id.* ¶¶ 44, 47.  Plaintiffs contend that Defendants Chandler and Group Authentic disclosed trade secrets acquired from RxSport to Defendant MaxBat, as well as to third parties. *Id.* ¶¶ 38, 51.

Plaintiffs bring suit against all Defendants for trademark infringement under 15 U.S.C. § 1114 (Count I), trademark infringement under 15 U.S.C. § 1125(a) (Count II), false association under 15 U.S.C. § 1125(a) (Count III), false designation of origin under 15 U.S.C. § 1125(a) (Count IV), and unfair competition under Florida common law (Count V).  Plaintiffs also sue David Chandler for breach of contract (Count VI) and Conversion (Count VII), and sue Chandler, Group Authentic, and MaxBat for Misappropriation of Trade Secrets under 18 U.S.C. § 1836 *et seq*. (Count VIII).  Defendant MaxBat, a Minnesota corporation, now moves to dismiss the claims against it for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure.

**LEGAL STANDARD**

This Court reviews *de novo* the determination of any disputed portions of the Magistrate Judge's Report. *United States v. Powell*, 628 F.3d 1254, 1256 (11th Cir. 2010). Any portions of the Report to which no specific objection is made are reviewed only for clear error. *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006). A proper objection "identifie[s] specific findings set forth in the [Report] and articulate[s] a *legal* ground for objection." *Leatherwood v. Anna's Linens Co.*, 384 F. App'x 853, 857 (11th Cir. 2010) (alterations and emphasis added; citations omitted).

**ANALYSIS**

To begin, the Court affirms and adopts the Report's finding that Florida's long-arm statute reaches Defendant MaxBat. No party objects to this portion of the Report. Reviewed for clear error, the Court finds that the Report correctly concludes that because Plaintiffs reside in Florida and allege to have suffered a trademark injury in Florida, the requirements of Florida's long-arm statute are met. Report at 8. Additionally, the parties do not challenge the Report's summary of the relevant law regarding due process. Finding no error in the Report's recitation of the law, the Court adopts the statements of law on due process.

Plaintiffs only object to the application of law to the facts in the due process section of the Report. Accordingly, the Court reviews this portion of the Report *de novo*. The Court must consider whether Defendant MaxBat's nineteen shipments of baseball bats into Florida constitutes sufficient contact with the state such that MaxBat had "fair warning" or could have "reasonably anticipated" that it may be subject to suit in Florida. *See Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013).

As the Report correctly states, exercising personal jurisdiction over MaxBat through Florida's long-arm statute must comport with due process. Report at 8. "[D]ue process requires

only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). In determining whether the requirements of due process are met, courts employ a three-part due process test. *Louis Vuitton*, 736 F.3d at 1355.

Plaintiffs object to the Report's conclusion as to each portion of the *Luis Vuitton* three-part test. Plaintiffs argue: (1) MaxBat's contacts with Florida meet the "arising out of or relatedness" prong of the due process test; (2) MaxBat's contacts with Florida satisfy the "purposeful availment" prong of the due process test; and (3) the Report incorrectly concluded that "determining whether any burden on MaxBat is outweighed by other considerations is unnecessary." Objections at 3. Upon due consideration of the record, including Magistrate Judge Maynard's well-reasoned Report, Plaintiffs' Objections thereto, and MaxBat's Response, the Court finds that the exercise of personal jurisdiction over Defendant MaxBat does not violate due process. Therefore, the Court denies MaxBat's Motion to Dismiss. The Court addresses each argument in turn.

### A. Arising out of or Relatedness

As stated by the Report, to satisfy the first prong of the due process analysis, Plaintiffs' claims must "arise out of or relate to at least one of the defendant's contacts with the forum." *Louis Vuitton*, 736 F.3d at 1355. This inquiry "focus[es] on the direct causal relationship between the defendant, the forum, and the litigation." *Id.* at 1355–56. Importantly, not just any contacts will do: "For a State to exercise jurisdiction consistent with due process, the defendant's suit related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). The "mere fact that [defendant's] conduct affected plaintiffs with connections to

the forum State does not suffice to authorize jurisdiction." *Id.* at 291. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at 290. Moreover, the relationship between the forum and the defendant "must arise out of contacts that the 'defendant himself' creates with the forum…." *Id.* at 284 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Contacts between the plaintiffs or other third parties and the forum are not sufficient. *Id.*

Plaintiffs are not required to establish that their claim came about *because of* Defendants' in-state conduct, however. As the Report explains, the Eleventh Circuit previously held that "a tort 'arises out of or relates to' the defendant's activity in a state only if the activity is a 'but-for' cause of the tort." *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1314 (11th Cir. 2018). But the Supreme Court rejected this but-for causation requirement in *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021). *See Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1238 (S.D. Fla. 2021) (recognizing that *Ford* overruled the Eleventh Circuit's ruling in *Waite*). The Supreme Court explained that, while the first part of the "arise out of or relate to" requirement necessitates causation, the second part—the "relate to" portion—contemplates that jurisdiction is possible without a causal showing. *Ford*, 141 S. Ct. at 1026. A close relationship between Defendant's contacts with the forum and Plaintiffs' claims will also suffice. *Id.* at 1032.

With this background in mind, the Report concluded that Plaintiffs "fail[ed] to establish a close relationship between MaxBat's contacts with Florida and Plaintiffs' claims." Report at 10. The Report analyzed two connections between MaxBat and Florida, relevant to this question. First, the Report reasoned, "[a]s to distributing, MaxBat acknowledges that it sold a small number of bats to Group Authentic, which [MaxBat] shipped to Florida at the direction of Group Authentic, but shipping some bats to Florida at the direction of a customer does not establish a close relationship between MaxBat, Florida and Plaintiffs' claims." *Id.* Second, the Report noted, "[t]he

other contact between MaxBat and Florida established by the record is the fact that an average of 6.1% of MaxBat's overall sales, as measured by annual revenue, from April 1, 2019 through March 31, 2022, are from products shipped to Florida." *Id.*[1]

The Court disagrees with the Report's conclusion that "shipping some bats to Florida at the direction of a customer does not establish a close relationship between MaxBat, Florida and Plaintiffs' claims," for three reasons. *See* Report at 10. First, the Court does not agree with the Report's characterization that these are merely "some bats" or "a small number of bats." *See id.* On *nineteen* occasions, MaxBat knowingly shipped baseball bats into the state of Florida. This was not a one-off shipment. The Court is unaware of any precedent that establishes a threshold number of products that must be shipped to constitute a close relationship with a forum state.[2] In fact, district courts in the Southern District of Florida have been satisfied with representations that "numerous shipments" were made. *Fru Veg Mktg., Inc. v. Vegfruitworld Corp.*, 896 F. Supp. 2d 1175, 1181 (S.D. Fla. 2012) (also noting that "even a single act can support jurisdiction").

Second, the Court does not agree that the fact shipments to Florida were "at the direction of a customer" impacts the "arising out of or relatedness" analysis. The Report and the parties do not cite to any cases where shipments into a state, *if directed by the buyer*, do not constitute contacts with the state. Which makes sense. Shipments of a product into a state will naturally be at the direction of the buyer, as buyers inform manufacturers where they need their product to go.

---

[1] The parties dispute whether MaxBat knew the baseball bats at issue would be used by either Florida MLB teams or non-Florida teams attending spring training in Florida. *See, e.g.*, Response at 4–5. The parties also dispute whether the allegedly infringing baseball bats were sold to MLB players in Florida. *Id.* But the Court need not rely on either of these disputed facts in its due process analysis. MaxBat distributed thirty baseball bats across nineteen shipments into the state of Florida. And the baseball bats that MaxBat shipped are the allegedly infringing baseball bats, manufactured by MaxBat, which form the basis of Plaintiffs' claims in this case. These undisputed facts are sufficient to resolve the due process arguments.

[2] Justice Gorsuch anticipated this very question in his *Ford* concurrence, noting that "between the poles of 'continuous' and 'isolated' contacts lie a virtually infinite number of 'affiliations' waiting to be explored." *Ford*, 141 S. Ct. at 1035 (Gorsuch, J., concurring).

MaxBat argues that it understood the buyer to be located in Pennsylvania, and therefore it was a Pennsylvania sale. But this is not an instance where MaxBat shipped the baseball bats to Pennsylvania where the buyer was located and then the baseball bats were merely *used* in Florida.[3] MaxBat could have refused shipment to Florida. But it did not. *See Ford*, 141 S. Ct. at 1025 ("A defendant can thus structure [its] primary conduct to lessen or avoid exposure to a given State's courts."). Instead, MaxBat shipped thirty baseball bats directly into Florida across nineteen shipments, creating a close relationship between MaxBat and Florida.

Third, Plaintiffs' claims in this case center around the manufacture and sale of baseball bats that allegedly have markings that infringe upon Plaintiffs' trademark. The thirty baseball bats MaxBat manufactured and shipped to Florida are the very products at issue in this trademark infringement lawsuit. They are not, for example, another product of MaxBat's, unrelated to this case. As explained *infra*, Plaintiffs are not required to establish that their claim came about *because of* MaxBat's shipment to Florida. But because the shipment of thirty baseball bats into Florida, across nineteen shipments, contained the allegedly infringing marks, there is a close relationship between MaxBat's contacts with Florida and Plaintiffs' trademark infringement claims in this case. Accordingly, MaxBat's contacts with Florida arise out of and are related to the underlying claim, thereby satisfying the first prong of the due process test.

B. **Purposeful Availment**

As the Report states, in intentional tort cases such as trademark infringement, there are two applicable tests to determine whether a defendant has "purposefully availed" himself of the forum state: the traditional "minimum contacts" test, and the "effects test." *See Louis Vuitton*, 736 F.3d

---

[3] Surprisingly, MaxBat states in its reply brief that it "cannot control where players take products that it may manufacture." Reply at 2 [ECF No. 42]. This argument disregards the fact that MaxBat shipped bats to Florida. While MaxBat cannot control where players take their products, it certainly can control where it ships the bats that it manufactures. Here, MaxBat shipped them to Florida.

at 1356–57 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 779–80 (1984) ("minimum contacts") and *Calder v. Jones*, 465 U.S. 783, 789 (1984) ("effects test")).

### (1) Minimum Contacts

Under the traditional minimum contacts test, a court considers whether the defendant's contacts with the forum state "(1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum." *Louis Vuitton*, 736 F.3d at 1357. To conduct this analysis, the court "identif[ies] all contacts between the nonresident defendant and a forum state and ask[s] whether, individually or collectively, those contacts satisfy these criteria." *Id.*

This Court disagrees with the Report's conclusion that, "MaxBat did not avail itself of the Florida forum in such a way that it could reasonably anticipate being haled into a Florida court for claims involving Group Authentic's allegedly infringing baseball bats." Report at 11. The Report cites the Supreme Court's opinion in *Burger King*, for the notion that the "'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated contacts.'" *Burger King*, 471 U.S. at 462.

But this Court finds that MaxBat's contacts with Florida were not random, fortuitous, or attenuated. MaxBat received orders for shipments from another co-defendant. MaxBat knowingly shipped orders nineteen times to Florida. Thus, litigation in Florida arising from these orders is not "random" or "fortuitous." Further, the shipment of those products into Florida is not "attenuated" because the products form the very basis of this lawsuit.

The Court finds that the three-factor minimum contacts test is met. MaxBat's contacts with Florida are related to Plaintiffs' cause of action because MaxBat manufactured and shipped the allegedly infringing products into the forum State. MaxBat purposefully availed itself of the

privilege of doing business in Florida by agreeing to ship its products directly to Florida. It should come as no surprise to MaxBat that a lawsuit involving products it manufactured and shipped to Florida may result in MaxBat being haled into court in Florida.

As previously noted, in *Fru Veg Marketing*, the court found that where a foreign corporation made "numerous shipments" of produce to Florida, those contacts easily met the threshold for minimum contacts with the State, as the case centered around an alleged trademark violation on the packaging of that produce. *Fru Veg Mktg*, 896 F. Supp. 2d at 1181. Likewise, in *D.W. Mercer*, the court found that "the commission of the tortious act alleged in the Complaint and the delivery of [] 1,000 packages of strawberries into the Middle District of Florida" was "sufficient to establish the requirement of minimum contacts." *D.W. Mercer, Inc. v. Valley Fresh Produce, Inc.*, 146 F. Supp. 2d 1274, 1278 (M.D. Fla. 2001); *see also R&R Games, Inc. v. Fundex Games, Ltd.*, No. 8:12-CV-01957-T-27, 2013 WL 784397, at *8 (M.D. Fla. March 1, 2013) ("Smart and Vandoren are allegedly involved in the manufacture and sale of [puzzles] that infringe R&R's trademark. Vandoren and Smart purposefully availed themselves of the privileges of Florida by selling through the Internet and shipping into Florida allegedly infringing products.").

MaxBat's Response attempts to distinguish these cases from the matter before this Court. Response at 6–7. But the Court concludes these are differences without distinction. MaxBat argues these cases differ from the facts at hand for two reasons: (1) unlike in the cited cases, MaxBat did not intentionally infringe, and (2) the cited cases involve a higher volume of products shipped than the products shipped by MaxBat. While these facts may be relevant to MaxBat's defense at a later stage of this litigation, the Court does not find them pertinent here. Whether MaxBat knew the baseball bats contained allegedly infringing trademarks has no bearing on MaxBat's purposeful availment of the state of Florida. In other words, MaxBat still shipped products it manufactured into Florida nineteen times. As for MaxBat's argument that it shipped

fewer baseball bats into Florida than the number of shipments at issue in lawsuits about units of produce and mass-produced puzzles, the mere fact that MaxBat's products—high-end baseball bats for MLB players—are produced in lesser quantities than common produce or puzzles does not save MaxBat from the exercise of personal jurisdiction. *See, e.g.*, *Promex, LLC v. Perez Distrib. Fresno, Inc.*, No. 09-22285, 2010 WL 3452341, at *10 (S.D. Fla. Sept. 1, 2010) ("[T]he three contacts by Defendant with Florida that gave rise to Plaintiff's claims are sufficient to assert personal jurisdiction over Defendant. After all, even if Defendant does not own property or have an office located in Florida, Defendant 'entered' the state of Florida through its sales and shipment of the allegedly infringing products."). Given the context of this case, the Court finds that collectively, MaxBat's nineteen shipments of thirty baseball bats constitutes minimum contacts under this due process test.

### (2) Effects Test

The effects test is met when the tort was "(1) intentional; (2) aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." *See Licciardello v. Lovelady*, 544 F.3d 1280, 1285 (11th Cir. 2008) (citing *Calder*, 465 U.S. 783). Under the effects test, a non-resident defendant's single tortious act can establish purposeful availment even if a defendant does not have any additional contacts with the forum state. *See id.*

Here, the first two requirements are easily met. There is an intentional tort alleged: trademark infringement. The requirement that the tort was aimed at the forum state is met because MaxBat shipped the allegedly infringing products to Florida.

Whether Defendant MaxBat should have anticipated harm would be suffered in the forum state requires further discussion. MaxBat argues that Plaintiffs have not plead any facts to support the allegation that it should have anticipated harm would be suffered in Florida as a result of its actions. Response at 9. But the Court concludes that MaxBat should have anticipated that if harm

were to occur, it would occur, at a minimum, wherever MaxBat shipped its products. MaxBat's role as the manufacturer (rather than a retailer, for example) does not shield MaxBat from the exercise of personal jurisdiction. *See R&R Games*, 2013 WL 784397 at *8 ("[Defendants] are allegedly involved in the manufacture and sale of products that infringe [Plaintiff]'s trademark. [Defendants] purposefully availed themselves of the privileges of Florida by selling through the Internet and shipping into Florida allegedly infringing products. . . Allowing them to escape the court's reach would decrease the overall effectiveness of any relief granted to [Plaintiff]").

Applying the effects test, the Report looked to *Walden v. Fiore*, where the United States Supreme Court clarified that under the *Calder* effects test, the "plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." 571 U.S. at 285–86 (citing *Burger King*, 471 U.S. at 478). Thus, the effects test is not met solely because plaintiffs suffered harm in the forum state. The test requires that defendant's conduct be specifically "aimed at the forum state." *Id*. The Report concluded that "Plaintiffs fail[ed] to show that MaxBat did more than ship to Florida at Group Authentic's directive a small number of the bats at issue" and did not meet the test. Report at 12.

The Court disagrees with the Report and concludes that the requirements of *Walder* are met here. Plaintiffs are not the only link between MaxBat and Florida. Defendant's conduct, *i.e.,* shipping its products into Florida, links MaxBat to Florida. MaxBat specifically "aimed at the forum state" by shipping its products there. Exercising jurisdiction over MaxBat is not simply based on the location where Plaintiffs suffered harm, as forbidden by *Walden*. *See* 571 U.S. at 285–86. Thus, the Court finds that Plaintiffs have carried their burden under the effects test.

### C. Fair Play and Substantial Justice

If a plaintiff establishes the first two due process prongs, "a defendant must make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Louis Vuitton*, 736 F.3d 1355 (citations omitted). The Report did not engage in this analysis because it found that "Plaintiffs fail[ed] to meet their burden to satisfy the first two prongs of the due process analysis," and thus "determining whether any burden on MaxBat is outweighed by other considerations is unnecessary." Report at 13. Because this Court concludes that the "arising out of or relatedness" and "purposeful availment" prongs are met, the Court next considers whether the exercise of personal jurisdiction over MaxBat comports with traditional notions of fair play and substantial justice.

Courts consider the following four factors as part of this analysis: "(1) 'the burden on the defendant'; (2) 'the forum's interest in adjudicating the dispute'; (3) 'the plaintiff's interest in obtaining convenient and effective relief'; and (4) 'the judicial system's interest in resolving the dispute.'" *Louis Vuitton*, 736 F.3d 1358. "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477.

The Court is not persuaded that litigating this case against MaxBat in the Southern District of Florida would violate traditional notions of fair play and substantial justice. MaxBat has not submitted any arguments regarding the first, third, and fourth factors of this test. Importantly, MaxBat has not even attempted to maintain that it is burdened by litigating this case in this jurisdiction at all. MaxBat only alleges that "Plaintiff has not pled any facts to suggest that this forum has any interest in adjudicating this dispute" as required by the second prong. Motion [ECF No. 23] at 8. However, the Court finds that this forum has a strong interest in adjudicating this

dispute. *See Licciardello*, 544 F.3d at 1288 ("Florida has a very strong interest in affording its residents a forum to obtain relief from intentional misconduct of nonresidents causing injury in Florida.").

Accordingly, because the Court finds that the first two prongs of the due process test have been satisfied, and exercising jurisdiction over MaxBat does not violate notions of fair play and substantial justice, the Court concludes the exercise of jurisdiction over MaxBat through Florida's long-arm statute does not violate due process.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The Report, [ECF No. 54], is **ADOPTED IN PART AND REJECTED IN PART**. The Court adopts the portions of the Report addressing Florida's long-arm statute as it applies to MaxBat and the Report's recitation of the law on due process. The Court rejects the Report's conclusion that personal jurisdiction over MaxBat violates due process, and the reasons provided in support.

2. MaxBat's Motion to Dismiss, [ECF No. 23], is **DENIED**.

**DONE AND ORDERED** in Miami, Florida, this 1st day of February, 2023.

RODOLFO A. RUIZ II
**UNITED STATES DISTRICT JUDGE**